JONES DAY
Jane Rue Wittstein
Thomas E. Lynch
Michael T. Ferruggia
250 Vesey Street
New York, NY 10281
Tel: (212) 326-3939
Fax: (212) 755-7306

*Attorneys for Reorganized Debtor*
*NIU HOLDINGS LLC*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ------------------------------------------------ x | | |
| In the matter of: | : | **Chapter 11** |
| | : | |
| NIU Holdings LLC, | : | **Case No. 15-10155 (SCC)** |
| | : | |
| Reorganized Debtor. | : | |
| ------------------------------------------------ x | | |
| NIU Holdings LLC, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | **Adv. Proc. No. _____** |
| AT&T Mobility Holdings, B.V.; New Cingular | : | |
| Wireless Services, Inc.; Nextel International | : | |
| (Uruguay) LLC; and Communicaciones Nextel | : | |
| de México S.A. DE C.V., | : | |
| | : | |
| Defendants. | : | |
| ------------------------------------------------ x | | |

## ADVERSARY COMPLAINT
## FOR DECLARATORY JUDGMENT AND BREACH OF CONTRACT

# TABLE OF CONTENTS

**Page**

I.    NATURE OF THE ACTION................................................................................... 1

II.   JURISDICTION AND VENUE............................................................................. 8

III.  THE PARTIES ...................................................................................................... 9

    A.    PLAINTIFF................................................................................................ 9

        1.    NIU Holdings ............................................................................. 9

    B.    DEFENDANTS ......................................................................................... 9

        1.    AT&T Mobility .......................................................................... 9

        2.    New Cingular ............................................................................. 9

        3.    Nextel Uruguay ......................................................................... 9

        4.    Com Nextel ................................................................................ 9

IV.   FACTUAL BACKGROUND ................................................................................ 9

    A.    NII's Bankruptcy Case ............................................................................. 9

    B.    The Agreements ...................................................................................... 10

        1.    The Purchase and Sale Agreement .......................................... 10

        2.    The Escrow Agreement ............................................................ 11

    C.    AT&T's April 2017 Escrow Claim Notice ............................................ 13

        1.    AT&T's First Revision to Its Claimed Amounts..................... 16

        2.    NIU's Objection ...................................................................... 16

        3.    AT&T's Second Revision to Its Claimed Amounts ................ 16

        4.    AT&T's Claimed Amounts as of July 2017 ............................ 17

    D.    The Recent Resolution of Defendant Com Nextel's 2010 and 2011 Audits............ 18

    E.    AT&T's Assertion of New Claims Against the Escrow Account After the Final Release Date ................................................................................. 20

V.    CLAIMS FOR RELIEF ...................................................................................... 22

    A.    Declaratory Judgment Pursuant to 28 U.S.C. § 2201(a) (Against All Defendants) ............................................................................................ 22

    B.    Breach of Contract (Against All Defendants) ....................................... 24

VI.   PRAYER FOR RELIEF ...................................................................................... 25

Plaintiff NIU Holdings LLC[1] ("NIU" or "Plaintiff"), by and through its undersigned

counsel, brings this adversary proceeding against defendants AT&T Mobility Holdings B.V.

("AT&T"), New Cingular Wireless Services, Inc. ("New Cingular"), Nextel International (Uruguay)

LLC ("Nextel Uruguay"), and Communicaciones Nextel de México S.A. DE C.V. ("Defendant

Com Nextel," and collectively with AT&T Mobility, New Cingular and Nextel Uruguay, the

"Defendants"; together with Plaintiff, the "Parties"), and alleges as follows:

## I.    NATURE OF THE ACTION

1.    This adversary proceeding arises out of Defendants' efforts to frustrate Plaintiff's

receipt of funds from an Escrow Account (defined below) to which Plaintiff is entitled under the

agreements entered into by the Parties and approved by this Court. Plaintiff seeks a judgment:

(1) declaring that Defendants are in breach of the relevant agreements and (2) directing

the disbursement to NIU of $68,325,951 from the Escrow Account in which the disputed funds

are currently held.

2.    This dispute arises from a Purchase and Sale Agreement (the "Purchase Agreement"),

dated January 26, 2015, that was approved by this Court as part of the chapter 11 bankruptcy

proceedings of NII Holdings and its affiliates, including NIU. (*See In re: NII Holdings, Inc.*,

Case No. 14-12611 (the "NII Bankruptcy Proceedings"), ECF No. 575.)

3.    A significant event in the NII Bankruptcy Proceedings was the sale of the debtors'

Mexican business operations to Defendant New Cingular (an affiliate of AT&T) for $1.875 billion

---

[1] NIU Holdings LLC filed its petition on January 25, 2015 in the above-captioned case (Dkt No. 1).
At the time, NIU's proceedings were jointly administered (*see* Dkt No. 9) as part of the chapter 11
cases of NII Holdings, Inc. ("NII Holdings") and its affiliated debtors under NII Holdings' case
number 14-12611. Filings in the jointly administered proceedings will be cited as "ECF No. __".
On October 18, 2016, the Court entered the *Final Decree Pursuant to Section 350(a) of the
Bankruptcy Code and Bankruptcy Rule 3022 Closing the Debtors' Jointly Administered Chapter 11
Cases,* Dkt No. 10; ECF No. 988. On February 11, 2019, NIU Holdings filed a motion to reopen its
bankruptcy case in order to commence this adversary proceeding (Dkt No. 11).

in accordance with the terms of the agreed and approved Purchase Agreement and its ancillary documents. This sale was the cornerstone of the Debtors' First Amended Joint Plan of Reorganization,[2] and the sale proceeds were recognized as the key source for funding the Plan. (*See* Plan at II.E.)

4. The Purchase Agreement provided that $187.5 million—ten percent of the total purchase price—would be held in a designated escrow account (the "Escrow Account")[3] following the closing of the sale to satisfy indemnification claims AT&T was entitled to make within specified times based on pre-closing liabilities for which NII remained responsible. (Ex. 2, Purchase Agreement §§ 11.4(a), 11.5(a); Ex. 3, Escrow Agreement § 3(e)(i)(2).) Among expected indemnification claims were tax liabilities related to years before the sale closed and for which final liabilities had not been fixed.

---

[2] The *First Amended Joint Plan of Reorganization (Plan and Disclosure Statement Solicitation Version*, April 20, 2015, ECF No. 664) was approved by this Court on June 19, 2015 in the *Findings of Fact, Conclusions of Law and Order Confirming Pursuant to Section 1129(a) and (b) of the Bankruptcy Code The First Amended Joint Plan of Reorganization Proposed by the Debtors and Debtors in Possession and The Official Committee of Unsecured Creditors* (the "Confirmation Order") (ECF No. 831), which attached the First Amended Joint Plan of Reorganization as modified by certain ministerial and immaterial changes as Appendix I to the Confirmation Order (the "Plan") (ECF No. 831, Appx I). The Mexico Sale Order as defined in the Plan (hereinafter "Sale Order") refers to the *Order: (I) Approving Purchase and Sale Agreement; (II) Authorizing the Sale of All of the Membership Interests of Nextel International (Uruguay) LLC Free and Clear of Interests; (III) Approving the Transfer and Novation of the Liabilities of Nextel International (Uruguay) LLC, Enjoining the Enforcement of Such Liabilities and Dismissing Its Chapter 11 Case and (IV) Granting Certain Related Relief*, entered on March 23, 2015 (ECF No. 575) (attached hereto as Exhibit 1). The successful consummation of the Mexico sale was a condition precedent to the Effective Date of the Plan. (*See* Plan at VII.B.3.)

[3] Operation of the Escrow Account is governed by an Escrow Agreement (the "Escrow Agreement") which accompanied the Purchase Agreement and was one of the ancillary documents specifically governed by the Sale Order. (*See* Ex. 2, Purchase Agreement at Prelim. Stat. E; Ex. 3, Escrow Agreement; Sale Order at 2.)

5.      The sale of NII's Mexican business operations closed on April 30, 2015, and

$187.5 million of the sale price was deposited into the Escrow Account in accordance with

the Purchase Agreement and its accompanying Escrow Agreement.

6.      Under the terms of the Escrow Agreement, the "Final Release Date" for the Escrow

Account was April 30, 2017. (*See* Ex. 3, Escrow Agreement § 3(e)(iii)(1) (setting the date as "after

the second anniversary of the Closing Date.") Defendants were obligated to deliver "Claim Notices"

identifying all "Claimed Amounts" subject to the Escrow Account on or before that Final Release

Date. (*Id.* at 3(e)(i)(2) (defining Claim Notice and Claimed Amount) and 3(e)(iii)(1) (setting Final

Release Date).) Specifically, with respect to any individual claims that the Purchaser might assert

against the Escrow Account, Section 3(e)(i)(2) of the Escrow Agreement required a specific "Claim

Notice" describing the claim in reasonable detail and providing the estimated amount to be held in

reserve, all to be prepared in good faith:

> If the Purchaser intends to assert a claim against the Escrow Fund for
> Damages pursuant to Article 9 or Article 11 of the Purchase and Sale
> Agreement (each a "Claim"), then Purchaser shall deliver a written
> notice to Escrow Agent (with a copy to Seller) (each a "Claim Notice")
> describing such claim in reasonable detail and stating the estimate of
> the amount of the Escrow Fund to be reserved with respect to such
> Claim prepared in good faith based on information then available (the
> amount set forth in the applicable Claim Notice, the "Claimed
> Amount") (emphasis added).

7.      After the April 30, 2017 Final Release Date, the Parties were obligated to

execute a "Joint Release Notice" directing the release of remaining funds in the Escrow Account to

NIU, except to the extent Claimed Amounts subject to Claim Notices remained in dispute or

the "Objection Period" had not yet run as to a noticed "Claim." (*Id.* at 2(e)(i) (defining Joint Release

Notice), 3(e)(i)(3) (defining Objection Period), 3(e)(i)(2) (defining Claim), and 3(e)(iii)(1) (providing

for execution of Joint Release Notice).)

8.      On April 27, 2017, Defendant AT&T delivered to the Escrow Agent an Escrow Claim Notice (the "April 2017 Escrow Claim Notice") pursuant to the Escrow Agreement purporting to assert a right to $117.9 million relating to certain "Taxes and Damages" (as defined in the Purchase Agreement) for fiscal years 2010-2014 and for which AT&T purported to claim a right to immediate payment from the escrowed funds.  (Ex. 4, AT&T's April 2017 Escrow Claim Notice.) AT&T's April 2017 Escrow Claim Notice declared that the $117.9 million was an "aggregate amount of such Taxes and Damages" to which AT&T claimed a right to payment from Escrow Account funds.  AT&T's April 2017 Escrow Claim Notice divided the $117.9 million into two categories of estimated Taxes and Damages, with $80,600,000 relating to alleged liabilities for Defendant Com Nextel and $37,300,000 relating to alleged liabilities for certain affiliated Other Entities.[4]

9.      AT&T's delivery of the April 2017 Escrow Claim Notice served to immediately encumber $117.9 million in funds in the Escrow Account on the eve of the Final Release Date, effectively blocking NIU's timely access to funds to which it was otherwise entitled simply by providing what has now proven to be this grossly inflated April 2017 Escrow Claim Notice, as discussed below (and which may well have been unsupported by the "good faith" required under section 3(e)(i)(2) of the Escrow Agreement).

10.     On April 28, 2017 and in response to a demand from NIU, AT&T supplied NIU with detail regarding the $117.9 million in estimated Taxes and Damages that were the subject of its April 2017 Escrow Claim Notice.  (Ex. 5, 4/28/2017 Email from David Welsch to Shana Smith.) AT&T described its specific, individual estimates for Taxes and Damages claimed for each entity, for each year, and for each type of Mexican regulatory audit, as shown in Table 1:

---

[4] The affiliated "Other Entities" are Inversiones Nextel de Mexico, S. de R.L. de C.V. ("Inv. Mexico"), NII Telecom S. de R.L. de C.V. ("NII Telecom") and NII Digital, S. de R.L. de C.V. ("NII Digital").

| Audit | Entity | Estimated Taxes and Damages (USD) |
|---|---|---|
| Fiscal Year 2010 – Mexican income tax, VAT and flat tax audit | Comunicaciones Nextel de Mexico S.A. de C.V. | $38,600,000 |
| Fiscal Year 2011 – Mexican income tax, VAT and flat tax audit | Comunicaciones Nextel de Mexico S.A. de C.V. | $37,100,000 |
| Fiscal Year 2011 – Mexican impuesto especial sobre producción y servicios ("**IEPS**") audit and related administrative appeal filed October 26, 2015 | Inversiones Nextel de Mexico, S de R.L. de C.V. | $9,900,000 |
| Fiscal Year 2012 – Mexican IEPS audit and related administrative appeal filed January 28, 2016 | NII Telecom S. de R.L. de C.V. | $3,000,000 |
| Fiscal Year 2012 – Mexican flat tax audit | Comunicaciones Nextel de Mexico S.A. de C.V. | $3,800,000 |
| Fiscal Year 2013 – Mexican income tax, VAT, flat tax and IEPS audit | Comunicaciones Nextel de Mexico S.A. de C.V. | $1,100,000 |
| Fiscal Year 2013 – Mexican income tax, VAT and IEPS audit | Inversiones Nextel de Mexico, S de R.L. de C.V. | $12,900,000 |
| Fiscal Year 2013 – Mexican income tax, VAT and IEPS audit | NII Digital, S de R.L. de C.V. | $7,700,000 |
| Fiscal Year 2014 – Mexican income tax, Vat and IEPS audit | Inversiones Nextel de Mexico, S de R.L. de C.V. | $3,800,000 |

TABLE 1

11.    The Claim Amounts provided by AT&T, while ascribed to specific entities and specific tax years, were not all predicated on issues that had actually been raised in audits associated with those entities for the tax year being "estimated"; rather, AT&T appeared to take tax issues raised for one year and extrapolate potential liability to other years, creating inflated estimates as the basis for asserting the $117.9 million demand on the eve of the Final Release Date. *See, e.g.,* ¶ 45 *infra* (revising downward the aggregate amount of the Disputed Claim Amounts because AT&T had not actually received written notice of a 2012 income tax audit for Com Nextel).

12.    Under the terms of the Escrow Agreement, NIU had thirty (30) days to object to the April 2017 Escrow Claim Notice, as clarified by AT&T's April 28 correspondence. (Ex. 3, Escrow Agreement § 3(e)(i)(3).)  NIU timely disputed AT&T's April 2017 Escrow Claim Notice by

delivering an Objection Notice to the Escrow Agent on May 25, 2017. While NIU's Objection Notice effectively preserved the status quo by preventing disbursement of the $117.9 million AT&T sought to reserve in the Escrow Account based on its inflated estimates of potential future claims, all funds that were subject to AT&T's Claim Amounts were required to be frozen pending an agreement between the Parties or a court order. (*See* Ex. 6, 5/25/2017 Objection Letter; Ex. 7, 5/25/2017 Letter from Shana Smith to AT&T.)

13.    Specifically, under the Escrow Agreement, the funds that are the subject of AT&T's April 2017 Escrow Claim Notice and NIU's Objection Notice are "Disputed Claim Amounts" and thus are required by the terms of the Escrow Agreement to remain in the Escrow Account until the Escrow Agent receives the earlier of a Joint Release Notice from the Parties or a Final Judgment authorizing disbursement. (Ex. 3, Escrow Agreement § 3(e)(ii).)

14.    The Parties need not resolve each and every disputed tax claim that is the subject of AT&T's April 2017 Escrow Claim Notice before any funds in the Escrow Account are to be released. Instead, the Escrow Agreement provides that "upon resolution of <u>any</u> dispute that was the subject of an Objection Notice giving rise to a Disputed Claim Amount, Seller and Purchaser <u>shall deliver a Joint Release Notice</u> . . . to release . . . to Purchaser, the applicable amount . . . that is payable . . . and . . . to Seller, an amount equal to the excess of the entire balance then available in the Escrow Account (if any) over the aggregate Disputed Claim Amounts <u>still pending or disputed</u> . . . ." (Ex. 3, Escrow Agreement § 3(e)(iii)(2) (emphasis added).) Accordingly, as timely asserted individual claims are resolved, NIU is entitled to funds in the Escrow Account that are no longer Disputed Claim Amounts, and the Parties are obligated to deliver a Joint Release Notice to the Escrow Agent to release the excess funds to Purchaser. (*Id.*)

15.      In fact, following NIU's identification of two errors in the April 2017 Escrow

Claim Notice, AT&T agreed to correct the total aggregate amount of its estimated claims, resulting in

a reduction in its total claims to $109,941,971 from its original total of $117.9 million, and the release

of the related amounts from escrow to NIU. (*See* Ex. 8, 5/18/2017 Adjustment to Claimed Amount

and Joint Release Notice; Ex. 9, 7/18/2017 Joint Release Notice.) One of these errors resulted from

AT&T's inclusion of a specific individual claim that did not qualify for indemnification, while the

other resulted from the incorrect calculation of interest payments. (*See infra* ¶¶ 43, 45-49.) This

demonstrates that, as required by the Escrow Agreement, as specific individual claims are resolved,

the related amounts are to be disbursed to NIU and AT&T respectively, according to the Parties'

resolution of that specific claim.

16.      The dispute giving rise to this action arises from AT&T's unwillingness to deliver

a Joint Release Notice releasing funds from the Escrow Account to which NIU is entitled as a result

of Defendant Com Nextel's 2010 and 2011 audits being resolved with the Mexican tax authorities.

In its April 2017 Escrow Claim Notice, AT&T estimated that those Mexican tax audit matters

justified its demand for *more than $70 million* from the Escrow Account, and that inflated estimate

was the basis for holding up these funds when amounts not subject to a Claim Notice were released in

2017. The final liability for those 2010 and 2011 audits of Defendant Com Nextel has now been

finally resolved: the amended tax returns were filed, the amounts determined to be owed have been

satisfied, and the relevant government authorities have provided confirmation that the audits are

completed. The approximately $3.9 million—*less than 5.6% of the amount originally demanded in

the April 2017 Escrow Claim Notice*—required to indemnify AT&T for those matters has been

disbursed to AT&T from the Escrow Account with NIU's consent in a Joint Release Notice.

AT&T, however, refuses to execute a Joint Release Notice authorizing disbursement to NIU of

$68,325,951, the excess funds originally estimated by AT&T but never needed for those potential claims.

17.     Rather than release excess funds in compliance with the Parties' agreements, AT&T is withholding its consent to an appropriate Joint Release Notice and demanding that the Escrow Account funds be applied to entirely new demands for potential indemnity never included in its April 2017 Escrow Claim Notice or otherwise identified before the Final Release Date. (*See, e.g.*, Ex. 10, 4/5/2018 Letter from David Welsch to Shana Smith (suggesting an increase of $70 million to AT&T's original claim).) To the extent AT&T may ultimately be entitled to demand indemnification from NIU for additional rights under the Purchase Agreement, its ability to assert those as "Claims" against funds in the Escrow Account expired on the Final Release Date, April 30, 2017. (Ex. 3, Escrow Agreement § 3(e)(iii)(1).) In other words, AT&T may have continuing indemnification rights against NIU under the Purchase Agreement, but it has no right to encumber Escrow Account funds based on either newly asserted demands or upwardly revised Claims for which estimates were provided prior to the Final Release Date.

18.     Accordingly, NIU seeks an order and judgment finding and determining that (1) AT&T is in breach of the Purchase Agreement and the Escrow Agreement; and (2) there is no longer any dispute with respect to Defendant Com Nextel's 2010 and 2011 audits and the excess $68,325,951 should be released from the Escrow Account to NIU.

## II.    JURISDICTION AND VENUE

19.     This Court has jurisdiction to consider this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. 157(b).

20.     Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.    THE PARTIES

### A.    PLAINTIFF

#### 1.    NIU Holdings

21.     NIU Holdings is a Delaware limited liability company based in Reston, Virginia.

### B.    DEFENDANTS

#### 1.    AT&T Mobility

22.     Upon information and belief, Defendant AT&T Mobility is a Netherlands company based in Dallas, Texas. As noted below, AT&T Mobility is a permitted assignee of New Cingular's rights and interests in the agreements in issue in this adversary proceeding.

#### 2.    New Cingular

23.     Upon information and belief, Defendant New Cingular is a Delaware corporation based in Redmond, Washington.

#### 3.    Nextel Uruguay

24.     Upon information and belief, Defendant Nextel Uruguay is a Delaware limited liability company based in Reston, Virginia.

#### 4.    Com Nextel

25.     Upon information and belief, Defendant Com Nextel is a Mexican corporation based in Mexico City, Mexico.

## IV.    FACTUAL BACKGROUND

### A.    NII's Bankruptcy Case

26.     On September 15, 2014, NII Holdings and several of its affiliates filed for bankruptcy under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, in proceedings jointly administered by this Court under Case No. 14-12611. In connection with the bankruptcy, the debtors sought to sell off, among other assets, the entirety of the debtors' Mexican business operations.

27.     To that end, on January 24, 2015, NIHD Telecom Holdings, B.V. ("NIHD")—
formerly the legal and beneficial owner of NIU Holdings—engaged in a transaction pursuant to
which it transferred 100% of the outstanding membership interests of Nextel Uruguay to NIU
Holdings. At the time, Nextel Uruguay owned 7,575,738,489 shares, the vast majority, of the capital
stock of Defendant Com Nextel. The 3,595 remaining outstanding shares of Defendant Com Nextel
were already owned by a wholly owned subsidiary of Defendant Com Nextel. Thus, this transaction
involved the transfer of all of NII Holdings' interests in Defendant Com Nextel to NIU Holdings.

28.     Thereafter, on January 26, 2015, NIU Holdings entered into the Purchase Agreement
pursuant to which, as explained in greater detail below, it agreed to sell all of its interests in Nextel
Uruguay, and therefore also all of its interests in Defendant Com Nextel, to New Cingular. On
March 23, 2015, this Court approved the proposed sale transaction and Purchase Agreement,
pursuant to Sections 105 and 363 of the Bankruptcy Code. (ECF No. 575.) As is explained below,
that sale transaction ultimately closed on April 30, 2015, and ownership of Defendant Com Nextel
thereby transferred to New Cingular.

**B.     The Agreements**

**1.     The Purchase and Sale Agreement**

29.     The sale of the debtors' Mexican business was memorialized in the Purchase
Agreement pursuant to which NIU (the "Seller") agreed to sell all of its "right, title and interest in
and to [Nextel Uruguay's] Interests, free and clear of all 363 Interests [as defined in the Purchase
Agreement]." (Ex. 2, Purchase Agreement at 23 (§ 2.2).) The Final Purchase Price for this sale was
approximately $1.875 billion, minus certain adjustments. The Purchase Agreement was executed
on January 26, 2015 and the closing took place on April 30, 2015.

30.     The Purchase Agreement includes a provision for tax indemnification,[5] which states that NIU is "responsible for, and will indemnify and hold harmless [AT&T] . . . for all Taxes and Damages relating to . . . any taxes imposed on the Entities that are attributable to any PreClosing Period . . . ." (Ex. 2, Purchase Agreement at 83 (§ 11.4(a)).) Payments for such indemnification obligations may be made from the Escrow Account, in accordance with its terms, or from NIU directly. (Ex. 2, Purchase Agreement at 83 (§ 11.4(b)).)

31.     AT&T may seek indemnification for tax matters "[i]f a written notice of deficiency, proposed adjustment, adjustment, assessment, audit, examination or other administrative or court proceeding, suit, dispute or other claim (a 'Tax Claim') is delivered or sent to or commenced or initiated against any of the Entities by any Government Authority with respect to Taxes or Tax Returns . . . ." (Ex. 2, Purchase Agreement at 84 (§ 11.5(a)) (emphasis added).) In the event that AT&T receives such written notice, it must "promptly notify [NIU] in writing of the Tax Claim . . . ." (Ex. 2, Purchase Agreement at 84 (§ 11.5(a)) (emphasis added).)

### 2.     The Escrow Agreement

32.     In conjunction with the Purchase Agreement (*see* Ex. 2, Purchase Agreement at Prelim Stat. E), NIU, New Cingular and Citibank N.A. executed the Escrow Agreement, dated as of January 26, 2015 to establish a fund that could be available, among other purposes, to satisfy claims arising after the closing of the Purchase Agreement. Under that agreement, upon closing of the Purchase Agreement, NIU deposited the "Escrow Amount" of $187.5 million into the Escrow Account. (Ex. 2, Purchase Agreement at 7.) Citibank was appointed as the Escrow Agent charged with administering this Escrow Account. (Ex. 2, Purchase Agreement at 7.)

---

[5] Notably, tax indemnification is separate from other forms of indemnification under the agreement. (Ex. 2, Purchase Agreement at 86 (§ 11.7(a)).)

33.     Among other things, the Escrow Agreement sets forth the requirements for any distribution of funds from the Escrow Account. For example, if there is no dispute as to the distribution of money, the Purchaser and Seller may jointly execute and deliver to the Escrow Agent a Joint Release Notice instructing the Escrow Agent how and to whom to distribute the funds.

34.     The procedure for disbursements is different when, as is relevant to this action, there is a dispute between the Parties as to entitlement to funds in the Escrow Account. With respect to demands that the Purchaser might assert against the Escrow Account for alleged "Damages" it claims to have suffered under the Purchase Agreement, Section 3(e)(i)(2) of the Escrow Agreement provides:

> If the Purchaser intends to assert a claim against the Escrow Fund for Damages pursuant to Article 9 or Article 11 of the Purchase and Sale Agreement (each a "Claim"), then Purchaser shall deliver a written notice to Escrow Agent (with a copy to Seller) (each a "Claim Notice") describing such claim in reasonable detail and stating the estimate of the amount of the Escrow Fund to be reserved with respect to such Claim prepared in good faith based on information then available (the amount set forth in the applicable Claim Notice, the "Claimed Amount") (emphasis added).

35.     After the Purchaser files a Claim Notice, describing the claim in "reasonable detail" and providing an "estimate of the amount . . . to be reserved with respect to such Claim" which is to be "prepared in good faith based on information then available" pursuant to Section 3(e)(i)(2) of the Escrow Agreement, the Seller has thirty (30) days to file an "Objection Notice" setting forth any objection it may have to the Purchaser's Claim Notice. (*See* Ex. 3, Escrow Agreement § 3(e)(i)(3).) Upon the Seller's objection, the distribution procedures set forth in section 3(e)(ii) of the Escrow Agreement apply.

36.     Section 3(e)(ii) of the Escrow Agreement requires the Escrow Agent to distribute only undisputed amounts and to "continue to hold in the Escrow Account the amount in dispute (each such amount, a "Disputed Claim Amount") . . . ." The Escrow Agent is then required to hold the Disputed

Claim Amount until either (i) it receives from the Parties a Joint Release Notice directing the disposition of "all or part of" the Disputed Claim Amount, or (ii) a written notice by either the Purchaser or Seller (with copy to the other party) of a legally binding settlement agreement or a final and nonappealable order or judgment of a court or arbitral tribunal. (Ex. 3, Escrow Agreement § 3(e)(ii).)

37.     The "Final Release Date" for the Escrow Account is defined in the Escrow Agreement as "after the second anniversary of the Closing Date." (*See* Ex. 3, Escrow Agreement § 3(e)(iii)(1).) In this case, the Final Release Date was April 30, 2017.

38.     After that Final Release Date, the Escrow Agreement provides that all funds remaining in the Escrow Account are to be returned to NIU, except to the extent there are still disputes as to Claimed Amounts or the Objection Period has not yet run as to a noticed Claim. (*See* Ex. 3, Escrow Agreement § 3(e)(iii).) The Escrow Agreement further provides that "upon resolution of any dispute that was the subject of an Objection Notice giving rise to a Disputed Claim Amount, Seller and Purchaser shall deliver a Joint Release Notice . . . to release . . . to Purchaser, the applicable amount . . . that is payable . . . and . . . to Seller, an amount equal to the excess of the entire balance then available in the Escrow Account (if any) over the aggregate disputed Claim Amounts still pending or disputed . . . ." (Ex. 3, Escrow Agreement § 3(e)(iii)(2).)

### C.     AT&T's April 2017 Escrow Claim Notice

39.     On April 27, 2017, three days before the Escrow Agreement's Final Release Date, AT&T delivered to the Escrow Agent the April 2017 Escrow Claim Notice seeking disbursement of an "aggregate amount of such Taxes and Damages" totaling $117.9 million for fiscal years 2010–2014. (Ex. 4, April 2017 Escrow Claim Notice.)[6]

---

[6] The April 2017 Escrow Claim Notice of $117.9 million represented more than 70% of the $163.5 million remaining in the Escrow Account as of the Final Release Date.

40.        While AT&T's April 2017 Escrow Claim Notice indicated aggregate estimated taxes and damages of $80,600,000 related to Defendant Com Nextel and $37,300,000 related to the affiliated Other Entities, more specificity was required under the Parties' agreements.[7] (*See, e.g.,* Ex. 2, Purchase Agreement at § 11.5(a) (defining each Tax Claim singularly as written notice of, among other things, an audit); Ex. 3, Escrow Agreement § 3(e)(i)(2) (requiring that each Claim Notice must state "a reasonable estimate of the amount of the Escrow Fund to be reserved with respect to such [Tax] Claim").)

---

[7] The April 2017 Escrow Claim Notice, even as clarified by the April 28, 2017 correspondence, arguably failed to provide the "reasonable estimate(s) … prepared in good faith" for each asserted claim, since certain amounts were "Damages" that bore no reasonable relationship to the actual anticipated liability and thus arguably violated Section 3(e)(i)(2) of the Escrow Agreement. NIU does not waive any of the bases on which it has objected to the April 2017 Escrow Claim, but is focused here on Defendants' refusal to adhere to the requirement that excess funds reserved for a Disputed Claim be released once the claim for a specific tax year that was the subject of a Disputed Claim Amount has been resolved.  (Ex. 3, Escrow Agreement at 3(e)(iii)(2) ("upon resolution of any dispute that was the subject of an Objection Notice giving rise to a Disputed Claim Amount, Seller and Purchaser *shall* deliver a Joint Release Notice . . . to release . . . to Purchaser an amount equal to the excess of the entire balance then available in the Escrow Account (if any) over the aggregate Disputed Claim Amounts still pending or disputed . . . .") (emphasis added).)

41.     On April 28, 2017, in response to NIU's initial requests for a breakdown of the claims included in the April 2017 Escrow Claim Notice, AT&T provided the following table:

TABLE 1 (as of April 2017)

| Audit | Entity | Estimated Taxes and Damages (USD) |
|---|---|---|
| Fiscal Year 2010 – Mexican income tax, VAT and flat tax audit | Comunicaciones Nextel de Mexico S.A. de C.V. | $38,600,000 |
| Fiscal Year 2011 – Mexican income tax, VAT and flat tax audit | Comunicaciones Nextel de Mexico S.A. de C.V. | $37,100,000 |
| Fiscal Year 2011 – Mexican impuesto especial sobre producción y servicios ("**IEPS**") audit and related administrative appeal filed October 26, 2015 | Inversiones Nextel de Mexico, S de R.L. de C.V. | $9,900,000 |
| Fiscal Year 2012 – Mexican IEPS audit and related administrative appeal filed January 28, 2016 | NII Telecom S. de R.L. de C.V. | $3,000,000 |
| Fiscal Year 2012 – Mexican flat tax audit | Comunicaciones Nextel de Mexico S.A. de C.V. | $3,800,000 |
| Fiscal Year 2013 – Mexican income tax, VAT, flat tax and IEPS audit | Comunicaciones Nextel de Mexico S.A. de C.V. | $1,100,000 |
| Fiscal Year 2013 – Mexican income tax, VAT and IEPS audit | Inversiones Nextel de Mexico, S de R.L. de C.V. | $12,900,000 |
| Fiscal Year 2013 – Mexican income tax, VAT and IEPS audit | NII Digital, S de R.L. de C.V. | $7,700,000 |
| Fiscal Year 2014 – Mexican income tax, Vat and IEPS audit | Inversiones Nextel de Mexico, S de R.L. de C.V. | $3,800,000 |

42.     Except for the claims in Table 1, AT&T made no other claims against the Escrow Account for tax indemnities under Article 11 of the Purchase Agreement (or otherwise) prior to the Final Release Date. Accordingly, on May 4, 2017, the Parties delivered to the Escrow Agent a Joint Release Notice releasing to NIU $45,562,279.58 – the entire balance remaining in the Escrow Account less the Disputed Claim Amounts set forth in Table 1. (Ex. 11, 5/4/2017 Joint Release Notice.)

### 1.    AT&T's First Revision to Its Claimed Amounts

43.    On May 18, 2017, following correspondence with NIU regarding the April 2017

Escrow Claim Notice, AT&T revised the estimated aggregate amount of its claims from $117.9

million downward to $113.8 million "based on calculations of certain interest payments." (Ex. 8,

5/18/2017 Adjustment to Claimed Amount and Joint Release Notice.)  The Parties therefore delivered

to the Escrow Agent a Joint Release Notice directing the release of the $4.1 million back to NIU.

(*Id.*)

### 2.    NIU's Objection

44.    On May 25, 2017, NIU timely objected to the April 2017 Escrow Claim Notice.

(Ex. 6, 5/25/2017 Objection Letter; Ex. 7, 5/25/2017 Letter from Shana Smith to AT&T.)  NIU

set forth in that objection specific responses to each of AT&T's individual claims based on AT&T's

April 28, 2017 breakdown.  (*Id.*)  As is described above, the Escrow Agreement provides that the

Disputed Claim Amount remains in escrow "until the earlier to occur of the Escrow Agent's receipt

of (1) a Joint Release Notice executed and delivered by Purchase and Seller directing the disposition

of all or part of such Disputed Claim Amount in respect of which a dispute between Purchaser and

Seller has been resolved or (2) written notice executed and delivered by Purchaser and Seller (with a

copy to the other party) accompanied by a copy of (i) a legally binding agreement entered into by the

Parties with respect to the dispute, (ii) a final and nonappealable order or judgment of a court of

competent jurisdiction with respect to the dispute, or (iii) a final and nonappealable determination of

an arbitration or like panel to which the Parties have agreed to submit with respect to the dispute."

(Ex. 3, Escrow Agreement § 3(e)(ii).)

### 3.    AT&T's Second Revision to Its Claimed Amounts

45.    After NIU pointed out that AT&T's claims included $3,816,390 in respect of

2012 income taxes that were not based on any "written notice" as is required by Section 11.5(a)

of the Purchase Agreement to be a valid claim, (*See* Ex. 7, 5/25/2017 Letter from Shana Smith to AT&T), AT&T agreed to submit with NIU to the Escrow Agent a Joint Release Notice directing the release of $3,816,390 from the Escrow Account to NIU. (Ex. 9, 7/18/2017 Joint Release Notice.)

46.     The Parties' July 18, 2017 joint release of $3,816,390 from the Escrow Account to NIU reduced the aggregate amount of the Disputed Claim Amounts from $113.8 million to $109,941,971.

### 4.     AT&T's Claimed Amounts as of July 2017

47.     Based on the information AT&T has provided to NIU, the $109,941,971 aggregate amount of AT&T's remaining claims on the Escrow Account following the Parties' July 2017 joint release was comprised of $73,373,864 in claims related to Defendant Com Nextel and $36,568,107 in claims related to affiliated Other Entities.

48.    The changes to AT&T's claimed amounts from the April 2017 Escrow Claim Notice through its May 2017 revision and the July 2017 joint release are set forth in the table below:

TABLE 2 (as of July 2017)

| Audit | Entity | Estimated Taxes and Damages (USD) | | Adjustments | Updated Amount |
|---|---|---|---|---|---|
| Fiscal Year 2010 – Mexican income tax, VAT and flat tax audit | Comunicaciones Nextel de Mexico S.A. de C.V. | 38,600,000 | | (3,137,035) | 35,462,965 |
| Fiscal Year 2011 – Mexican income tax, VAT and flat tax audit | Comunicaciones Nextel de Mexico S.A. de C.V. | 37,100,000 | | (242,294) | 36,857,706 |
| Fiscal Year 2012 – Mexican flat tax audit | Comunicaciones Nextel de Mexico S.A. de C.V. | 3,800,000 | | (3,800,000) | - |
| Fiscal Year 2013 – Mexican income tax, VAT, flat tax and IEPS audit | Comunicaciones Nextel de Mexico S.A. de C.V. | 1,100,000 | | (46,807) | 1,053,193 |
| | Total Comunicaciones Nextel | 80,600,000 | | (7,226,136) | 73,373,864 |
| Fiscal Year 2011 – Mexican impuesto especial sobre producción y servicios ("IEPS") audit and related administrative appeal filed October 26, 2015 | Inversiones Nextel de Mexico, S de R.L. de C.V. | 9,900,000 | | (739,929) | 9,160,071 |
| Fiscal Year 2012 – Mexican IEPS audit and related administrative appeal filed January 28, 2016 | NII Telecom S. de R.L. de C.V. | 3,000,000 | | 5,111 | 3,005,111 |
| Fiscal Year 2013 – Mexican income tax, VAT and IEPS audit | Inversiones Nextel de Mexico, S de R.L. de C.V. | 12,900,000 | | (40,164) | 12,859,836 |
| Fiscal Year 2013 – Mexican income tax, VAT and IEPS audit | NII Digital, S de R.L. de C.V. | 7,700,000 | | 6,870 | 7,706,870 |
| Fiscal Year 2014 – Mexican income tax, Vat and IEPS audit | Inversiones Nextel de Mexico, S de R.L. de C.V. | 3,800,000 | | 36,219 | 3,836,219 |
| | Total Other Entities | 37,300,000 | | (731,893) | 36,568,107 |
| | Total Claims | 117,900,000 | | | 109,941,971 |

49.    The original April 2017 Escrow Claim Notice amounts are listed in the column titled "Estimated Taxes and Damages (USD)." The reductions to claims from May 2017 and July 2017 are shown in the "Adjustments" column. The new aggregate amount of AT&T's claims subject to its April 2017 Escrow Claim Notice is shown in the column titled "Updated Amount."

**D.    The Recent Resolution of Defendant Com Nextel's 2010 and 2011 Audits**

50.    Upon information and belief, AT&T satisfied 100% of its obligations with respect to Defendant Com Nextel's 2010 tax audit without any outlay of cash, and accordingly, no escrow funds were disbursed to AT&T.

51.    On July 9, 2018, the Parties executed a Joint Release Notice that provided for the disbursement of $3,994,720.20 to AT&T from the Escrow Account related to resolution of Defendant Com Nextel's 2011 tax audit. (Ex. 12, 7/9/2018 Letter Agreement and Joint Release Notice.)

52.    Following the July 9, 2018 disbursement of funds from the Escrow Agreement related to Defendant Com Nextel's 2011 tax audit, the funds in the Escrow Account subject to Disputed Claims was reduced from $109,941,971 to $105,947,250.80.

53.    As demonstrated in Table 2, above, AT&T estimated claims of $35,462,965 and $36,857,706, respectively, for Defendant Com Nextel's 2010 and 2011 audits within AT&T's aggregate claim amounts.

54.    Defendant Com Nextel's 2010 and 2011 audits have now been resolved.  The amended returns have been filed, all amounts determined to be due have been satisfied, and the relevant governmental authorities have provided confirmation that the audits at issue are resolved and closed.  As a result, there is no longer any basis for AT&T to maintain its claims to funds in the Escrow Account related to those formerly potential liabilities.

55.    Notwithstanding resolution of Defendant Com Nextel's 2010 audit, AT&T has not agreed to jointly release to NIU $35,462,965 in accordance with the Escrow Agreement, as that amount is the remaining Disputed Claim Amount related to Defendant Com Nextel's 2010 audit, which is no longer a potential liability and should not be disputed.

56.    Similarly, notwithstanding resolution of Defendant Com Nextel's 2011 audit, AT&T has not agreed to jointly release to NIU $32,862,986 in accordance with the Escrow Agreement, as that amount is the remaining Disputed Claim Amount related to Defendant Com Nextel's 2011 audit, which is no longer a potential liability and should not be disputed.

57.    The adjustments to reflect the actual liability that has now been resolved for Defendant Com Nextel's 2010 and 2011 audits versus the estimated amounts on Table 2 for the tax years that were the subject of the April 2017 Escrow Claim Notice (through its May 2017 revision and the

July 2017 Joint Release Notice) are set forth in the table below:

TABLE 3 (reflecting resolved 2010 and 2011 audits)

| Audit | Entity | As of July 2017 (Table 2) | Adjustments for Closed Audits | Updated Amount After Closed Audits |
|---|---|---|---|---|
| Fiscal Year 2010 – Mexican income tax, VAT and flat tax audit | Comunicaciones Nextel de Mexico S.A. de C.V. | 35,462,965 | (0) to AT&T | 35,462,965 owed to NIU |
| Fiscal Year 2011 – Mexican income tax, VAT and flat tax audit | Comunicaciones Nextel de Mexico S.A. de C.V. | 36,857,706 | (3,994,720.20) to AT&T | 32,862,986 owed to NIU |
| | | | **Total Due NIU** | **$68,325,951** |

| | | | | |
|---|---|---|---|---|
| Fiscal Year 2012 – Mexican flat tax audit | Comunicaciones Nextel de Mexico S.A. de C.V. | | | |
| Fiscal Year 2013 – Mexican income tax, VAT, flat tax and IEPS audit | Comunicaciones Nextel de Mexico S.A. de C.V. | 1,053,193 | | |
| Fiscal Year 2011 – Mexican impuesto especial sobre producción y servicios ("**IEPS**") audit and related administrative appeal filed October 26, 2015 | Inversiones Nextel de Mexico, S de R.L. de C.V. | 9,160,071 | | |
| Fiscal Year 2012 – Mexican IEPS audit and related administrative appeal filed January 28, 2016 | NII Telecom S. de R.L. de C.V. | 3,005,111 | | |
| Fiscal Year 2013 – Mexican income tax, VAT and IEPS audit | Inversiones Nextel de Mexico, S de R.L. de C.V. | 12,859,836 | | |
| Fiscal Year 2013 – Mexican income tax, VAT and IEPS audit | NII Digital, S de R.L de C.V. | 7,706,870 | | |
| Fiscal Year 2014 – Mexican income tax, Vat and IEPS audit | Inversiones Nextel de Mexico, S de R.L. de C.V. | 3,886,219 | | |
| | Total Remaining Claims | **37,621,300** | | |
| **Total Funds still in escrow** | | | $105,947,250.80 | |

58.    In total, AT&T has not agreed to jointly release to NIU the total sum of $68,325,951, which is the excess of amounts AT&T originally estimated in April 2017 for Defendant Com Nextel's 2010 and 2011 audits.  Those potential tax liabilities have now been resolved, and AT&T has no basis to maintain those claims against the escrow funds.

**E.    AT&T's Assertion of New Claims Against the Escrow Account After the Final Release Date**

59.    On April 5, 2018, AT&T responded to an initial request from NIU that a Joint Release Notice be executed to disburse excess funds related to Defendant Com Nextel's 2010 and 2011 audits.  AT&T declined, arguing that (1) the April 2017 Escrow Claim Notice comprised one Disputed Claim that need not be disbursed until every element was resolved, and (2) even if the 2010 and 2011 audits were resolved, AT&T's estimates for tax liability had purportedly "increased by almost $70,000,000."  (Ex. 10, 4/5/2018 Letter from David Welsch to Shana Smith.)

60.     Effectively, despite previously executing a Joint Release Notice for Disputed Claim Amounts that were resolved (*see* ¶¶ 45-46 *supra*), AT&T has now taken the position that, even as individual claims that were the subject of its April 2017 Escrow Claim Notice have been resolved, excess escrow funds that were the subject of those claims are somehow transferrable to new demands that AT&T contends arose after the Final Release Date or to demands which were detailed in the April 2017 Escrow Claim Notice for which AT&T contends its timely submitted estimates were too low. Not coincidentally, the amount of these newly asserted demands is slightly higher than the amount of excess funds reserved for previously Disputed Claim Amounts which have now been resolved. Therefore, Defendants are refusing to execute a Joint Release Notice in order to withhold funds in the Escrow Account due to NIU, even though these amounts admittedly are no longer needed to satisfy Defendants' previous inflated indemnification demands for the 2010 and 2011 tax years.

61.     NIU responded promptly to AT&T's refusal to execute a Joint Release Notice related to excess Escrow Account funds related to Defendant Com Nextel's 2010 and 2011 audits, pointing out that (1) AT&T's April 2017 Escrow Claim Notice was comprised of multiple individual claims, and (2) nothing in the operative agreements gives AT&T rights to assert new demands against the Escrow Account after the Final Release Date or to revise upward estimates for claims timely made prior to the Final Release Date. (Ex. 13, 4/24/2018 Letter from John Kane to David Welsch.)

62.     On July 18, 2018, NIU sent to AT&T a draft Joint Release Notice requesting disbursement to NIU of $68,325,951—an amount equal to the funds in the Escrow Account exceeding the actual claims related to Defendant Com Nextel's 2010 and 2011 audits.

63.     On August 3, 2018, counsel for AT&T responded to NIU's draft Joint Release Notice and reiterated AT&T's position that the April 2017 Escrow Claim Notice constituted a single claim,

that AT&T is entitled to revise claim amounts after the Final Release Date, and that NIU is not entitled to any disbursements of Escrow Account funds. (Ex. 14, 8/3/2018 Letter from Werner F. Ahlers to John Kane.) As such, Defendants have made clear their refusal to execute a Joint Release Notice authorizing the release of the excess funds admittedly no longer needed to satisfy the claims related to Defendant Com Nextel's 2010 and 2011 audits, leaving NIU with no choice but to commence this Adversary Proceeding to obtain a judgment authorizing the Escrow Agent to release the funds which should be returned to NIU under the plain terms of the Purchase Agreement and Escrow Agreement.

## V.    CLAIMS FOR RELIEF

### A.    Declaratory Judgment Pursuant to 28 U.S.C. § 2201(a) (Against All Defendants)

64.    Plaintiff incorporates by reference the allegations of paragraphs 1 through 63 inclusive, as though fully set forth herein.

65.    Pursuant to 28 U.S.C. § 2201, made applicable in Bankruptcy Court by Fed. R. Bankr. Proc. 7001, NIU seeks a declaratory judgment that: (1) AT&T is in breach of the Purchase Agreement and the Escrow Agreement; (2) there is no longer any dispute with respect to Defendant Com Nextel's 2010 and 2011 audits, and $68,325,951 in Escrow Account funds previously related to those audits should be disbursed to NIU.

66.    There is an actual controversy between interested parties related to the April 2017 Escrow Claim Notice delivered by AT&T related to Defendant Com Nextel and affiliated Other Entities and seeking disbursement of an "aggregate amount of such Taxes and Damages" originally totaling $117.9 million and now totaling $105,947,250.80 for fiscal years 2010-2014 (*see* Tables 2 and 3). These funds remain in the Escrow Account (under the custody of Citibank) pending resolution of these claims either through a Joint Release Notice or a final judgment.

67.     Under the Purchase Agreement, any claims for indemnity made against the Escrow Account were to be delivered prior to the Final Release Date. AT&T was to provide "a reasonable estimate of the amount of the Escrow Fund to be reserved with respect to such [Tax] Claim prepared in good faith based on information then available." The Claims could not be based on theoretical tax liability; rather, they must be based on "written notice" of, among other things, an audit. As each claim is resolved, the Parties may execute a Joint Release Notice for release of "all or part of" the Disputed Claim Amount.

68.     Nowhere in the Parties' agreements is AT&T authorized to encumber funds other than those identified in an Claim Notice delivered before the Final Release Date, based on estimated liabilities identified before the Final Release Date.

69.     AT&T provided to NIU the basis for its April 2017 Escrow Claim Notice on April 28, 2017. The individual claims constituting AT&T's claims against the Escrow Account and the estimated amounts for those individual claims were all identified before the Final Release Date (*see* Table 1, *supra*). AT&T has no right under the Parties' agreements to assert new individual demands against funds in the Escrow Account, or to revise estimates it provided in April 2017 to increase existing claims for other tax years or other entities against funds in the Escrow Account. Any new or revised demands must be asserted separately against NIU under the Purchase Agreement.

70.     Accordingly, Plaintiff seeks a declaratory judgment from the Court setting forth the Parties' rights and obligations as to the Disputed Claim Amounts currently held in escrow, NIU's entitlement to the return of excess funds being held in the Escrow Account given the resolution of Defendant Com Nextel's 2010 and 2011 audits, and AT&T's revised and/or newly-asserted claims post-Final Release Date.

### B.   Breach of Contract (Against All Defendants)

71.   Plaintiff incorporates by reference the allegations of paragraphs 1 through 70 inclusive, as though fully set forth herein.

72.   The Purchase Agreement and the Escrow Agreement are valid and enforceable contracts, freely entered into by the parties thereto all of whom are sophisticated business entities represented at all times by experienced and well-respected legal counsel and other professionals.

73.   Pursuant to those agreements, Defendants purchased the entirety of the business, including all of the associated assets and liabilities, of Defendant Com Nextel. The agreements contemplated indemnification of AT&T for certain tax claims via an Escrow Account, provided that AT&T received written notice of the tax claim and, in turn, requested disbursement of an estimated amount based on then-available information.

74.   Plaintiff has duly performed its obligations under these contracts. Plaintiff provided the consideration called for under the Purchase Agreement, and all associated agreements, including transferring the entirety of Defendant Com Nextel's business to Defendants. Even when the present dispute under the agreements arose, Plaintiff has acted in good faith to release undisputed amounts from the Escrow Account and to try to reach a consensual and fair resolution of AT&T's claims.

75.   As explained herein, Defendants have breached the Purchase Agreement and the Escrow Agreement by (1) failing to provide a reasonable estimate of the amount of the Escrow Fund to be reserved with respect to its tax claims "in good faith based on information then available;" and (2) failing to execute and deliver a Joint Release Notice calling for the disbursement of part of the Disputed Claim Amount following the resolution of certain claims included in AT&T's April 2017 Escrow Claim Notice.

76.   Defendants seek to withhold in the Escrow Account funds to which NIU is rightfully entitled. Following resolution of AT&T's claims for indemnification for certain tax liability, the

funds in the Escrow Account should have been released to NIU promptly.   Defendants' failure to comply with the plain language of the Escrow Agreement constitutes a breach of the "good faith" provision of section 3(e)(i)(2) of the Escrow Agreement, which states that AT&T must only assert claims against the Escrow Account that can be stated in "good faith."  AT&T's refusal to authorize disbursement to NIU of the excess claim amounts predicated on AT&T's purportedly new or revised claims of $70 million—asserted almost one year after the Final Release Date—is not proceeding in good faith.

77.    Plaintiff will incur substantial harm as a result of Defendants' breaches of contract and bad faith assertion of its entitlement to the entire Disputed Claim Amount currently held in escrow. If Defendants' tactics go uncorrected Plaintiff will suffer financial harm in an amount to be determined at trial.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter an order and judgment:

1. Declaring that:

    a.  AT&T is in breach of the Purchase Agreement and the Escrow Agreement;

    b.  there is no longer any dispute with respect to Defendant Com Nextel's 2010 and 2011 audits and the excess $68,325,951 should be released from the Escrow Account back to NIU; and

    c.  any claims asserted against the escrow account by AT&T after the Final Release Date are invalid and must be separately claimed under the Purchase Agreement.

2. Awarding damages to Plaintiff in an amount to be determined at trial;

3. Awarding interest, costs, expenses and attorneys' fees to Plaintiff, in an amount to be determined at trial; and

4.  Awarding such further relief as the Court deems just and proper.

Dated: March 25, 2019
       New York, New York

Respectfully submitted,

 / s / Thomas E. Lynch
Jane Rue Wittstein
Thomas E. Lynch
Michael T. Ferruggia
JONES DAY
250 Vesey St.
New York, NY 10281-1047
Tel:    (212) 326-3939
Fax:    (212) 755-7306
Email:  jruewittstein@jonesday.com
        telynch@jonesday.com
        mferruggia@jonesday.com

*Attorneys for Reorganized Debtor*
*NIU HOLDINGS LLC*