James L. Bromley
William B. Monahan
Virginia R. Hildreth
David Salter
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| In the matter of: | : |
| | : **Chapter 11** |
| NIU Holdings LLC, | : |
| | : **Case No. 15-10155 (SCC)** |
| Reorganized Debtor. | : |
| | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| NIU Holdings LLC, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| AT&T Mobility Holdings, B.V.; New Cingular Wireless Services, Inc.; Nextel International (Uruguay) LLC; and Communicaciones Nextel de México S.A. DE C.V., | : **Adv. Proc. No. 19-01099** |
| | : |
| Defendants. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**DEFENDANTS' AMENDED ANSWER, AFFIRMATIVE DEFENSES,**
**AND COUNTERCLAIMS TO THE COMPLAINT FOR DECLARATORY**
**JUDGMENT AND BREACH OF CONTRACT FILED BY NIU HOLDINGS LLC**

Defendants AT&T Mobility Holdings B.V. ("AT&T Mobility"), New Cingular Wireless Services, Inc. ("New Cingular"), Nextel International (Uruguay), LLC ("Nextel Uruguay"), and Comunicaciones Nextel de México, S.A. de C.V. ("Com Nextel"; collectively, "Defendants"), by their undersigned attorneys, respectfully submit their amended answer, affirmative defenses, and counterclaim to Plaintiffs' Complaint for Declaratory Judgment and Breach of Contract (the "Complaint"). Any allegations not expressly admitted herein are hereby denied. Pursuant to Federal Rule of Bankruptcy Procedure 7012, Defendants consent to the entry of final orders or judgment by the Bankruptcy Court.

### ANSWER

1. The allegations contained in Paragraph 1 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations of Paragraph 1, except admit that Plaintiff purports to seek the relief described in Paragraph 1.

2. Defendants admit that the Purchase Agreement, dated January 26, 2015, was approved by this Court as part of the chapter 11 bankruptcy proceedings of NIU Holdings LLC ("NIU") and affiliates, but deny that Paragraph 2 presents a complete and accurate description of the Purchase Agreement or the parties' instant dispute.

3. Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 3 and footnote 2, except admit that AT&T Mobility purchased all of the wireless communications services business of Plaintiff and its affiliates in Mexico pursuant to the terms of the Purchase Agreement and its ancillary documents, and respectfully refer the Court to the Purchase Agreement and its ancillary documents, Debtors' First Amended Joint Plan of Reorganization, the Confirmation Order, and the Sale Order for a complete and accurate description of their terms.

4.      Defendants deny the allegations contained in Paragraph 4 and footnote 3, except respectfully refer the Court to the Purchase Agreement and Escrow Agreement for a complete and accurate description of their terms and admit that expected indemnification claims included, but were not limited to, tax liabilities related to years before the sale closed and for which final liabilities had not been fixed.

5.      Defendants admit the allegations of Paragraph 5.

6.      Defendants deny the allegations contained in Paragraph 6, except respectfully refer the Court to the Escrow Agreement for a complete and accurate description of its terms.

7.      Defendants deny the allegations contained in Paragraph 7, except respectfully refer the Court to the Escrow Agreement for a complete and accurate description of its terms.

8.      Defendants deny the allegations contained in Paragraph 8 and footnote 4, except admit that on April 27, 2017, AT&T Mobility delivered to the Escrow Agent a Claim Notice, and respectfully refer the Court to the April 27, 2017 Claim Notice for a complete and accurate description of its contents.

9.      Defendants deny the allegations of Paragraph 9, except respectfully refer the Court to the April 27, 2017 Claim Notice for a complete and accurate description of its terms and to the Escrow Agreement for a complete and accurate description of the effect of the delivery of a Claim Notice under the Escrow Agreement.

10.      Defendants deny the allegations of Paragraph 10, except admit that on April 27, 2017, NIU requested information regarding the April 27, 2017 Claim Notice and that on April 28, 2017, Defendants voluntarily supplied NIU with the information NIU had requested, noting that the information provided was "AT&T's current estimate" and was "subject to AT&T's ongoing review and revision based on developments in the various audit proceedings," and

respectfully refer the Court to the referenced correspondence for a complete and accurate description of their contents.

11.     Defendants deny the allegations of Paragraph 11 and aver that the Claim Amount set forth in the April 27, 2017 Claim Notice represented AT&T Mobility's good faith estimate of the aggregate amount of indemnifiable Taxes and Damages based on information then available to AT&T Mobility.

12.     Defendants deny the allegations of Paragraph 12, except admit that NIU delivered an Objection Notice to the Escrow Agent on May 25, 2017 and respectfully refer the Court to the Escrow Agreement, the May 25, 2017 Objection Notice, and the May 25, 2017 Letter from Shana Smith for a complete and accurate description of their terms and contents.

13.     Defendants deny the allegations of Paragraph 13, except respectfully refer the Court to the Escrow Agreement for a complete and accurate description of its terms.

14.     Defendants deny the allegations of Paragraph 14, except respectfully refer the Court to the Escrow Agreement for a complete and accurate description of its terms.

15.     Defendants deny the allegations of Paragraph 15, except admit that AT&T Mobility agreed to revise the Claimed Amount pursuant to the May 18, 2017 Adjustment to Claimed Amount and Joint Release Notice and the July 18, 2017 Letter Agreement and Joint Release Notice, and that AT&T Mobility executed Joint Release Notices on May 18, 2017 and July 18, 2017, and respectfully refer the Court to the May 18, 2017 Adjustment to Claimed Amount and Joint Release Notice and the July 18, 2017 Letter Agreement and Joint Release Notice for a complete and accurate description of their terms.

16.     Defendants deny the allegations contained in Paragraph 16, except admit that the 2010 and 2011 audits of Com Nextel have been finally resolved, that $3,994,720.20 was

disbursed to AT&T Mobility pursuant to the July 9, 2018 Letter Agreement and Joint Release Notice, and that AT&T Mobility has declined to execute a Joint Release Notice authorizing the disbursement to NIU of $68,325,951, and respectfully refer the Court to the Escrow Agreement, the April 2017 Escrow Claim Notice, and the July 9, 2018 Letter Agreement and Joint Release Notice for a complete and accurate description of their terms and contents.

17.     Defendants deny the allegations of Paragraph 17, except respectfully refer the Court to the April 5, 2018 Letter from David Welsch, the April 27, 2017 Claim Notice, and the Escrow Agreement for a complete and accurate description of their contents and terms.

18.     The allegations contained in Paragraph 18 contain legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 18, except admit that Plaintiff purports to seek the relief described in Paragraph 18.

19.     The allegations contained in Paragraph 19 contain legal conclusions to which no response is required.

20.     The allegations contained in Paragraph 20 contain legal conclusions to which no response is required.

21.     Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 21.

22.     Defendants admit that AT&T Mobility is a Netherlands company based in Dallas, Texas and is a permitted assignee of New Cingular's rights and interests in the Purchase Agreement and the Escrow Agreement.

23.     Defendants admit the allegations of Paragraph 23.

24.     Defendants admit the allegations of Paragraph 24.

25.     Defendants admit the allegations of Paragraph 25.

26. Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 26.

27. Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations of Paragraph 27.

28. Defendants admit the allegations of Paragraph 28, except aver that NIU transferred its interests in Nextel Uruguay and Com Nextel to AT&T Mobility, and respectfully refer the Court to the Purchase Agreement and the March 24, 2015 Assignment and Assumption Agreements between New Cingular and AT&T Mobility for a complete and accurate description of their terms.

29. Defendants deny the allegations of Paragraph 29, except admit that the Purchase Agreement was executed on January 26, 2015 and that the closing took place on April 30, 2015, and respectfully refer the Court to the Purchase Agreement for a complete and accurate description of its terms.

30. Defendants deny the allegations of Paragraph 30 and footnote 5, except respectfully refer the Court to the Purchase Agreement for a complete and accurate description of its terms.

31. Defendants deny the allegations of Paragraph 31, except respectfully refer the Court to the Purchase Agreement for a complete and accurate description of its terms.

32. Defendants deny the allegations of Paragraph 32, except admit that the Escrow Agreement was executed on January 26, 2015, that NIU thereafter deposited the Escrow Amount of $187.5 million into the Escrow Account, and that Citibank is the Escrow Agent, and respectfully refer the Court to the Purchase Agreement and the Escrow Agreement for a complete and accurate description of their terms.

33.     Defendants deny the allegations of Paragraph 33, except respectfully refer the Court to the Escrow Agreement for a complete and accurate description of its terms.

34.     Defendants deny the allegations of Paragraph 34, except respectfully refer the Court to the Escrow Agreement for a complete and accurate description of its terms.

35.     Defendants deny the allegations of Paragraph 35, except respectfully refer the Court to the Escrow Agreement for a complete and accurate description of its terms.

36.     Defendants deny the allegations of Paragraph 36, except respectfully refer the Court to the Escrow Agreement for a complete and accurate description of its terms.

37.     Defendants deny the allegations of Paragraph 37, except admit that the Final Release Date was April 30, 2017 and respectfully refer the Court to the Escrow Agreement for a complete and accurate description of its terms.

38.     Defendants deny the allegations of Paragraph 38, except respectfully refer the Court to the Escrow Agreement for a complete and accurate description of its terms.

39.     Defendants deny the allegations of Paragraph 39 and footnote 6, except admit that AT&T Mobility delivered to the Escrow Agent a Claim Notice on April 27, 2017 and respectfully refer the Court to the Claim Notice for a complete and accurate description of its contents.

40.     Defendants deny the allegations of Paragraph 40 and footnote 7, except respectfully refer the Court to the April 27, 2017 Claim Notice, the Purchase Agreement and the Escrow Agreement for a complete and accurate description of their contents and terms.

41.     Defendants deny the allegations of Paragraph 41, except respectfully refer the Court to the April 28, 2017 email and attachment from David Welsch for a complete and accurate description of their contents.

42.     Defendants deny the allegations of Paragraph 42, except admit that, other than as set forth in the April 27, 2017 Claim Notice, AT&T Mobility did not make other claims against the Escrow Account for tax indemnities under Article 11 of the Purchase Agreement prior to the Final Release Date and that AT&T Mobility executed a Joint Release Notice on May 4, 2017 releasing to NIU $45,562,279.58, and respectfully refer the Court to the April 27, 2017 Claim Notice and the May 4, 2017 Joint Release Notice for a complete and accurate description of their contents.

43.     Defendants deny the allegations of Paragraph 43, except respectfully refer the Court to the May 18, 2017 Adjustment to Claimed Amount and Joint Release Notice for a complete and accurate description of its contents.

44.     Defendants deny the allegations of Paragraph 44, except respectfully refer the Court to the May 25, 2017 Objection Letter, the May 25, 2017 Letter from Shana Smith, and the Escrow Agreement for a complete and accurate description of their contents and terms.

45.     Defendants deny the allegations of Paragraph 45, except admit that on July 18, 2017, AT&T Mobility delivered to the Escrow Agent a Joint Release Notice for the release of $3,816,390, and respectfully refer the Court to the Purchase Agreement and the July 18, 2017 Letter Agreement and Joint Release Notice for a complete and accurate description of their terms and contents.

46.     Defendants deny the allegations of Paragraph 46, except admit that the July 18, 2017 joint release of $3,816,390 from the Escrow Account to NIU reduced the Disputed Claim Amount from $113.8 million to $109,941,971.

47.     Defendants deny the allegations of Paragraph 47, except admit that the Disputed Claim Amount in respect of the April 27, 2017 Claim Notice is $109,941,971.

48.     Defendants deny the allegations of Paragraph 48, except respectfully refer the Court to the April 27, 2017 Claim Notice, the May 18, 2017 Adjustment to Claimed Amount and Joint Release Notice, and the July 18, 2017 Letter Agreement and Joint Release Notice for a complete and accurate description of their contents.

49.     Defendants deny the allegations of Paragraph 49, except respectfully refer the Court to the April 27, 2017 Claim Notice, the May 18, 2017 Adjustment to Claimed Amount and Joint Release Notice, and the July 18, 2017 Letter Agreement and Joint Release Notice for a complete and accurate description of their contents.

50.     Defendants admit the allegations of Paragraph 50.

51.     Defendants deny the allegations of Paragraph 51, except admit that on July 9, 2018, the Parties executed a Joint Release Notice that provided for the disbursement of $3,994,720.20 to AT&T Mobility from the Escrow Account, and respectfully refer the Court to the July 9, 2018 Letter Agreement and Joint Release Notice for a complete and accurate description of its contents.

52.     Defendants deny the allegations of Paragraph 52, except admit that following the July 9, 2018 disbursement of funds from the Escrow Account, the funds in the Escrow Account were reduced from $109,941,971 to $105,947,250.80, and respectfully refer the Court to the July 9, 2018 Letter Agreement and Joint Release Notice for a complete and accurate description of its contents.

53.     Defendants deny the allegations of Paragraph 53, except respectfully refer the Court to the April 27, 2017 Claim Notice for a complete and accurate description of its contents.

54.     Defendants admit the allegations of the first and second sentences of Paragraph 54, but deny the allegations of the third sentence of Paragraph 54.

55.     Defendants deny the allegations of Paragraph 55, except admit that AT&T Mobility has not agreed to the joint release notice requested by NIU, and respectfully refer the Court to the Escrow Agreement for a complete and accurate description of its terms.

56.     Defendants deny the allegations of Paragraph 56, except admit that AT&T Mobility has not agreed to the joint release notice requested by NIU, and respectfully refer the Court to the Escrow Agreement for a complete and accurate description of its terms.

57.     Defendants deny the allegations of Paragraph 57 and deny that Table 3 presents a fair and accurate description of the Disputed Claim Amount.

58.     The allegations contained in Paragraph 58 contain legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 58, except admit that AT&T Mobility has not agreed to the joint release notice requested by NIU and respectfully refer the Court to the Escrow Agreement for a complete and accurate description of its terms.

59.     Defendants deny the allegations of Paragraph 59, except admit that AT&T Mobility declined to execute the joint release notice requested by NIU and respectfully refer the Court to the April 5, 2018 Letter from David Welsch to Shana Smith for a complete and accurate description of its contents.

60.     Defendants deny the allegations of Paragraph 60 and deny that Paragraph 60 presents a fair and accurate description of Defendants' position in this matter.

61.     Defendants deny the allegations of Paragraph 61, except respectfully refer the Court to the April 24, 2018 Letter from John Kane to David Welsch for a complete and accurate description of its contents.

62.     Defendants deny the allegations of Paragraph 62, except admit that on July 18, 2018, NIU sent to AT&T Mobility a draft of a Joint Release Notice requesting disbursement to NIU of $68,325,951 and respectfully refer the Court to that document for a complete and accurate description of its contents.

63.     Defendants deny the allegations of Paragraph 63, deny that Paragraph 63 presents a fair and accurate description of Defendants' position in this matter, admit that AT&T Mobility declined to execute the joint release notice requested by NIU, and respectfully refer the Court to the August 3, 2018 letter from Werner F. Ahlers to John Kane for a complete and accurate description of its contents.

64.     Defendants repeat and incorporate by reference the answers provided to Paragraphs 1 through 63 as if fully set forth herein.

65.     The allegations contained in Paragraph 65 contain legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 65 and deny that NIU is entitled to the relief requested therein.

66.     The allegations contained in Paragraph 66 contain legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 66, except admit that the amounts in dispute remain in the Escrow Account under the custody of Citibank.

67.     Defendants deny the allegations of Paragraph 67, except respectfully refer the Court to the Purchase Agreement for a complete and accurate description of its terms.

68.     Defendants deny the allegations of Paragraph 68, except respectfully refer the Court to the Purchase Agreement and the Escrow Agreement for a complete and accurate description of their terms.

69.     Defendants deny the allegations of Paragraph 69, except admit that Defendants provided to NIU information that NIU had requested about the April 27, 2017 Escrow Claim Notice on April 28, 2017, deny that Paragraph 69 presents a fair and accurate description of Defendants' position in this matter, and respectfully refer the Court to the referenced correspondence, the Purchase Agreement and the Escrow Agreement for a complete and accurate description of their contents and terms.

70.     Defendants deny that Plaintiff is entitled to the relief requested.

71.     Defendants repeat and incorporate by reference the answers provided to Paragraphs 1 through 70 as if fully set forth herein.

72.     Defendants admit the allegations of Paragraph 72.

73.     Defendants deny the allegations of Paragraph 73, except admit that AT&T Mobility purchased NII's wireless telecommunications service business in Mexico pursuant to the terms of the Purchase Agreement and its ancillary documents, and respectfully refer the Court to the Purchase Agreement and the Escrow Agreement for a complete and accurate description of their terms.

74.     Defendants deny the allegations of Paragraph 74, except admit that Plaintiff has provided the consideration called for under the Purchase Agreement, and respectfully refer the Court to the Purchase Agreement and the Escrow Agreement for a complete and accurate description of their contents.

75.     The allegations contained in Paragraph 75 contain legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations of Paragraph 75.

76. The allegations contained in Paragraph 76 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations of Paragraph 76 and respectfully refer the Court to the Escrow Agreement for a complete and accurate description of its contents.

77. The allegations contained in Paragraph 77 contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations of Paragraph 77.

## PRAYER FOR RELIEF

Defendants deny that Plaintiff is entitled to any of the relief requested in its Prayer for Relief and respectfully request that the Court instead enter a declaratory judgment in favor of Defendants and any other and further relief for Defendants as may be just and proper.

## DEFENSES

Without undertaking any burden of proof not otherwise assigned to it by law, Defendants assert the following defenses with respect to the claims Plaintiff purports to assert in the Complaint and reserve the right to amend their answer to assert any other defense that facts developed during discovery may disclose.

## FIRST DEFENSE

Plaintiff's Complaint fails to state a claim upon which relief can be granted.

## SECOND DEFENSE

Plaintiff is not entitled to the requested relief because it is inconsistent with the terms of the parties' written agreements.

## THIRD DEFENSE

Plaintiff's claims are barred in whole or in part by equity.

## FOURTH DEFENSE

Plaintiff's claims are barred in whole or in part because, and to the extent that, any relief or recovery would unjustly enrich or constitute a windfall to Plaintiff.

## FIFTH DEFENSE

Plaintiff's claims are barred in whole or in part because, and to the extent that, they are an attempt to deprive Defendants of the indemnification to which they are entitled under the Purchase and Escrow Agreements.

## SIXTH DEFENSE

Defendants affirmatively raise and reserve all other applicable equitable and legal defenses.

<u>**COUNTERCLAIMS**</u>

Defendants and Counterclaimants AT&T Mobility, New Cingular, Nextel Uruguay, and Com Nextel (for purposes of these Counterclaims, "Defendants-Counterclaimants" or "AT&T"), by and through their undersigned counsel, hereby assert the following Counterclaims against Plaintiff and Counterdefendant NIU and Counterdefendant NII Holdings, Inc. (for purposes of these Counterclaims, "NII" and collectively with NIU, "Plaintiffs-Counterdefendants") and allege as follows:

## I.     NATURE OF THE ACTION

1.      This adversary proceeding arises out of Defendants-Counterclaimants' undisputed right to indemnification by NIU of Tax Claims,[1] indemnification that is unconditionally guaranteed by NII.  NIU's and NII's ability to meet their indemnification obligations is threatened by the imminent sale of NII's last remaining asset and its publicly announced plans to immediately thereafter dissolve.  Furthermore, NII has taken the troubling step of giving the minority stakeholder in that asset rights to funds in the Escrow Account expressly set aside for AT&T's tax indemnification claims—funds which NIU is now aggressively pursuing through its adversary action.

2.      Defendants-Counterclaimants' claims arise from the Purchase Agreement, approved as part of the chapter 11 bankruptcy proceedings of NII and its affiliates, including NIU.  (*See In re: NII Holdings, Inc.*, Case No. 14-12611 (the "NII Bankruptcy Proceedings");

---

[1]      Unless otherwise defined, capitalized terms are given the meanings set forth in the January 26, 2015 Purchase and Sale Agreement ("Purchase Agreement") (ECF No. 1-2) and the January 26, 2016 Escrow Agreement ("Escrow Agreement") (ECF No. 1-3).  Unless otherwise indicated, citations to the Adversary Proceeding, Case No. 19-ap-01099, will be cited as "ECF No. _."

Order Approving Purchase and Sale Agreement, ECF No. 1-1, (the "Approval Order"); Purchase Agreement, ECF No. 1-2.)

3.     In the NII Bankruptcy Proceedings, the debtors sold their Nextel Mexican business to New Cingular pursuant to the Purchase Agreement.  The existence of significant pre-closing liabilities was known to the parties and this Court at the time, and the transaction accordingly relied on NIU's full indemnification of AT&T as to any tax liabilities that came to light post-closing (as well as NII's guarantee of such indemnification).  The Approval Order expressly acknowledged that AT&T "*would not have entered into the Purchase Agreement* . . . if (a) the [NIU] Liability Assumption and [Nextel International (Uruguay) LLC] Novation were not approved in all respects or (b) [Nextel and its affiliates] . . . were not free and clear" of "all [l]iabilities, whether . . . matured or unmatured."  (Approval Order, ECF No. 1-1, ¶ BB).  (*See* Purchase Agreement, ECF No. 1-2, at 23.)

4.     The Purchase Agreement included a general provision requiring NIU to indemnify AT&T for the full amount of the Tax Claims, and separately established the Escrow Account to satisfy indemnification claims made within specified time windows for pre-closing liabilities, including tax liabilities.  (Purchase Agreement, ECF No. 1-2, §§ 11.4(a), 11.5(a), 11.7; Escrow Agreement, ECF No. 1-3, § 3.)

5.     In order to preserve their rights to the funds in the Escrow Account, AT&T was required to send a Claim Notice identifying Claimed Amounts, describing the claim "in reasonable detail" and "stating a reasonable estimate of the amount . . . to be reserved" in good faith "based on information then available."  (Escrow Agreement, ECF No. 1-3, § 3(e)(i)(2).)

6.     AT&T delivered a Claim Notice on April 27, 2017 identifying Claimed Amounts of $117,900,000 for Tax Claims as set forth in Annex A thereto.  (April 27, 2017 Claim Notice,

ECF No. 1-4.) In this Claim Notice, AT&T provided just that: a good faith estimate of the Claimed Amounts, based on the information available to it at the time, which included penalty estimates provided to AT&T by the Mexican tax authorities.

7.      At the request of NIU, AT&T provided a breakdown of the estimates by year (again, based on the information AT&T had at the time). (*See* April 28, 2017 Email from David Welsch to Shana Smith, ECF No. 1-5.) AT&T then revised its claims downward to $113.8 million, releasing $4.1 million to NIU. (May 18, 2017 Adjustment to Claimed Amount and Joint Release Notice, ECF 1-8.)

8.      NIU then disputed AT&T's claim against the Escrow Account regarding a 2012 tax proceeding, creating a Disputed Claim amount. The parties ultimately agreed to a joint release of $3,816,390 from the Escrow Account (July 18, 2017 Joint Release Notice, ECF No. 1-9), bringing the total amount in the Escrow Account to $109,941,971.

9.      In July 2018, $3,994,720.20 was released to AT&T as a result of the resolution of one of the Tax Claims (July 9, 2018 Letter Agreement and Joint Release Notice, ECF No. 1-12), bringing the Escrow Account to its current level of $105,947,250.80.

10.      Since the Escrow Account was established, claims relating to fiscal years 2010 and 2011 have been resolved for less than the estimated penalties initially provided by the Mexican tax authorities.

11.      However, AT&T's estimates of the potential liability for the Tax Claims subject to the April 2017 Claim Notice have substantially increased since then as a result of the delivery of additional information by the Mexican tax authorities regarding their claims. In addition, AT&T has sent NIU a Claim Notice under the Purchase Agreement for additional claims of $264,242,546 regarding certain 2012 taxes. Taking into account increases in other claim

amounts for periods previously noticed to NIU, the potential total amount of estimated remaining Tax Claims against NIU is $502,922,689, nearly five times as much as the amount currently in the Escrow Account. NIU is fully aware of the nature and amount of these claims and, in fact, is defending against them pursuant to Section 9.4 of the Purchase Agreement. (Purchase Agreement, ECF No. 1-2, § 9.4.)

12. Despite the fact that the funds in the Escrow Account were set aside for the express purpose of satisfying NIU's obligations for the Tax Claims after NIU disputed the claims and generated a Disputed Claim Amount, NIU is pursuing the release of $68,325,951 from the Escrow Account. (Complaint ¶ 1.) This is both counter to the purpose of the Escrow Account, and is troubling in the context of the planned sale of Nextel Brazil by NII, which has guaranteed NIU's obligation to AT&T for these tax liabilities.

13. The sale of NII's sole remaining substantial asset raises concerns regarding NIU's ability to meet its pre-existing obligation under the Purchase Agreement to indemnify AT&T fully for the Tax Claims. A troubling component of this sale includes giving AI Brazil BV ("AI Brazil")—the minority holder of the equity in Nextel Brazil—rights to funds NIU seeks to recover from the Escrow Account through its adversary action in this proceeding. These concerns are further exacerbated by NII's announced plans to dissolve immediately after the sale of Nextel Brazil, raising questions about NIU's intent and ability to indemnify AT&T for these Tax Claims as required by the Purchase Agreement.

14. Defendants-Counterclaimants therefore respectfully seek an order and judgment enjoining NIU and NII from implementing a dissolution plan that fails to reserve the full amount of $502,922,689, which reflects AT&T's best estimate of the total amount of the Tax Claims; or

in the alternative, requiring the establishment of a reserve of that full amount, to be released only upon further order of this Court.

## II.  JURISDICTION AND VENUE

15.    This Court has jurisdiction to consider this matter under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

16.    Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.  THE PARTIES

### A.  Defendants-Counterclaimants

17.    Defendant-Counterclaimant AT&T Mobility is a Netherlands company based in Dallas, Texas.

18.    Defendant-Counterclaimant New Cingular is a Delaware corporation based in Redmond, Washington.

19.    Defendant-Counterclaimant Nextel Uruguay is a Delaware limited liability company based in Reston, Virginia.

20.    Defendant-Counterclaimant Com Nextel is a Mexican corporation based in Mexico City, Mexico.

### B.  Plaintiffs-Counterdefendants

21.    Plaintiff-Counterdefendant NIU is a Delaware limited liability company based in Reston, Virginia.

22.    Counterdefendant NII is a Delaware corporation based in Reston, Virginia.

## IV. FACTUAL BACKGROUND

### A. NII's Bankruptcy and Sale of Its Mexican Business

23. On September 25, 2014, NII Holdings, Inc. and several of its affiliates filed for bankruptcy under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, in proceedings jointly administered by this Court under Case No. 14-12611.

24. On January 26, 2015, NIU entered into the Purchase Agreement pursuant to which it agreed to sell all of its interests in Defendant-Counterclaimant Nextel Uruguay, and therefore also all of its interests in Com Nextel, to New Cingular. On March 23, 2015, this Court approved the proposed sale transaction and Purchase Agreement, pursuant to Sections 105 and 363 of the Bankruptcy Code. (ECF No. 1-1.) The sale transaction ultimately closed on April 30, 2015, and ownership of Com Nextel transferred to New Cingular.

25. At the time of the sale transaction, the parties were aware that Defendant-Counterclaimant Com Nextel faced significant outstanding tax liabilities to the Mexican tax authorities, the ultimate value of which was unknown. As described in further detail below, the Purchase Agreement ensured that AT&T would be fully indemnified by NIU for the Tax Claims and that NII would guarantee such obligation. Further, the parties' agreement ensured that NIU would reserve in the Escrow Account *sufficient and segregated funds against those tax liabilities* claimed before April 30, 2017, according to AT&T's estimate, based on *the best information available at the time*, to avoid the need for AT&T to compete with third parties for NIU's limited remaining assets or pursue costly and time-consuming litigation to enforce its indemnification rights.

#### 1. The Purchase Agreement and Escrow Account

26. Pursuant to the Purchase Agreement, NIU sold the entirety of its interests in Com Nextel to AT&T for a final purchase price of $1.875 billion, minus certain adjustments. The

Purchase Agreement was executed on January 26, 2015 and the closing took place on April 30, 2015.

27.     Com Nextel faced significant and outstanding tax liabilities to the Mexican tax authorities at the time of the sale.

28.     NIU knew full well that its agreement to not only indemnify AT&T for Com Nextel's tax liabilities, but to reserve a significant amount of funds sufficient to cover potential liabilities in a segregated escrow account, was critical in getting the deal done.

29.     Specifically, the parties agreed that upon closing of the Purchase Agreement, NIU would deposit $187.5 million into an Escrow Account that would be available, among other purposes, to satisfy claims arising after the closing of the Purchase Agreement.  (*See* Purchase Agreement, ECF No. 1-2, at 7.)

30.     This Court's Order approving the Purchase Agreement expressly recognized that the deal relied on AT&T's full indemnification.  (*See* Approval Order, ECF No. 1-1, ¶ BB) (AT&T "*would not have entered into the Purchase Agreement* . . . if (a) the [NIU] Liability Assumption and [Nextel International (Uruguay) LLC] Novation were not approved in all respects or (b) [Nextel and its shares] . . . were not free and clear" of "all [l]iabilities, whether . . . matured or unmatured.")  (*See* Purchase Agreement, ECF No. 1-2, at 23.)

31.     In particular, the Purchase Agreement includes a specific tax indemnification provision, under which NIU is "responsible for, and will indemnify and hold harmless [AT&T] . . . for . . . all Taxes and Damages relating to . . . any Taxes imposed on the Entities that are attributable to any Pre-Closing Period."  (Purchase Agreement, ECF No. 1-2, § 11.4(a).)

32.     To support these indemnification obligations, in conjunction with the Purchase Agreement, NIU, New Cingular and Citibank N.A. executed the Escrow Agreement, dated

January 26, 2015.  Citibank was appointed as the Escrow Agent charged with administering the Escrow Account.  (Purchase Agreement, ECF No. 1-2, at 7.)

33.     The Escrow Agreement sets forth the requirements for any distribution of funds from the Escrow Account.  "[A]t any time," AT&T and NIU may deliver a "Joint Release Notice" to the Escrow Agent "instructing the Escrow Agent to distribute all or a portion of the Escrow Fund."  (Escrow Agreement, ECF No. 1-3, § 3(e)(i)(1).)

34.     Section 3(e)(i)(2) sets out the procedure to be followed "[i]f [AT&T] intends to assert a claim against the Escrow Fund" for "Damages pursuant to" certain liability and tax issues payable pursuant to Article 11 of the Purchase Agreement.  In that circumstance, AT&T is required to deliver a "Claim Notice" to the Escrow Agent "describing such claim in reasonable detail and stating [AT&T's *reasonable estimate* of the amount of the Escrow Fund to be reserved with respect to such Claim prepared in good faith *based on information then available*." (Escrow Agreement, ECF No. 1-3, § 3(e)(i)(2).)

35.     If NIU does not submit an "Objection Notice" within 30 days "disputing in reasonable detail [AT&T's] right to indemnification," then the Escrow Agent is directed to release the claimed funds.  (*Id.* § 3(e)(i)(3).)

36.     If NIU has delivered a sufficient Objection Notice to the Escrow Agent within 30 days, the Escrow Agent is directed to (i) release to AT&T any funds not in dispute; and (ii) continue to hold in the Escrow Account the amount in dispute, until (a) the parties submit a Joint Release Notice directing the disposition of all or part of the disputed funds, or (b) one party delivers a notice to the Escrow Agent with either a legally binding agreement entered into by the parties with respect to the dispute, or a final judgment by a court or arbitral tribunal.  (*Id.* § 3(e)(ii).)

37.     The "Final Release Date" for the Escrow Account was April 30, 2017.  (*Id.* § 3(e)(iii)(1).)  The Escrow Agreement required the Escrow Agent to return non-disputed funds to NIU after the Final Release Date, and to continue to hold disputed amounts.  (*Id.* § 3(e)(iii).)

### 2.     AT&T's Claimed Amounts Under the Escrow Agreement

38.     Audit orders issued by the Mexican tax authorities state which fiscal years and which taxes will be subject to review.  Throughout the audit proceedings, which can take years from the time of initial notice of an audit to resolution, particularly if litigation is involved, tax authorities may examine and challenge different aspects of an entities' obligations regarding the taxes and period subject to review as defined in an audit notice for the relevant fiscal years.

39.     As of April 27, 2017, Com Nextel and its affiliated entities faced mounting potential tax liabilities to the Mexican tax authorities.  Specifically, the Mexican tax authorities had issued audit orders providing notice that the income taxes, flat taxes, excise taxes, and value-added taxes of Nextel and certain related entities for certain of the 2010 to 2014 fiscal tax years were subject to audit (the "Audit Proceedings").

40.     When AT&T timely delivered a Claim Notice on April 27, 2017 (ECF No. 1-4), the Audit Proceedings were at various procedural stages.  For the Audit Proceedings AT&T was aware of at the time, the Mexican tax authorities had not yet determined the potential tax liabilities for all of the related entities being audited.  AT&T later received additional documentation, from which the potential amount of the tax liabilities significantly increased by approximately $238 million.  In addition, as of April 27, 2017, the Mexican tax authorities had not yet notified AT&T of the audit orders for the 2012 audit proceedings.  AT&T later submitted a Claim Notice for this period in May 2019 for $264,242,546.

41.     In accordance with AT&T's "good faith" obligation to "*estimate*" the amount to be "reserved . . . *based on information then available*," (Escrow Agreement, ECF No. 1-3,

§ 3(e)(i)(2) (emphasis added)), and in accordance with NIU's obligation to indemnify AT&T for *all* tax penalties assessed against Nextel and related entities arising from pre-closing transactions (*see* Purchase Agreement, ECF No. 1-2, § 11.4), the April 2017 Escrow Claim Notice noted that "[c]ertain of the [purchased entities] are subject to Tax Claims *that are expected to result in Taxes and Damages* for which [NIU] is obligated to indemnify [AT&T]."  (April 2017 Escrow Claim Notice, ECF No. 1-4, at 1) (emphasis added).  The notice also clearly stated that AT&T's "estimate as of the date hereof, and *subject to amendment in the event additional information becomes available*, of the aggregate amount of such Taxes and Damages," was $117.9 million. (*Id*.) (emphasis added).  This "estimate" was "based on [the] information then available" (*see* Escrow Agreement, ECF No. 1-3, § 3(e)(i)(2))—the Audit Proceedings noticed by the Mexican Tax Authorities prior to the Final Release Date contemplated by the Escrow Agreement, but was "subject to amendment in the event additional information becomes available."  (April 2017 Escrow Claim Notice, ECF No. 1-4, at 1.)

42.     On May 4, 2017, the parties delivered to the Escrow Agent a Joint Release Notice releasing to NIU the *then* undisputed balance remaining in the Escrow Account of $45,562,279.58.  (May 4, 2017 Joint Release Notice, ECF No. 1-11.).  That notice was delivered by AT&T based on the best information *then* available to it.

43.     On May 18, 2017, based on revised interest calculations, AT&T revised its claim from $117.9 million to $113.8 million, and the parties delivered a Joint Release Notice directing the release of $4.1 million from the Escrow Account to NIU.  (May 18, 2017 Adjustment to Claimed Amount and Joint Release Notice, ECF No. 1-8.)  This amendment was delivered by AT&T based on the best information *then* available to it.

44.     On May 25, 2017, NIU filed an objection with the Escrow Agent objecting to the April 2017 Escrow Claim Notice.  (May 25, 2017 Objection Letter, ECF No. 1-6.)

45.     On the same day, NIU delivered a letter to AT&T "disagree[ing] that [AT&T] or any of [its] affiliates are entitled to indemnity" for *any* tax claim in the April 2017 Escrow Claim Notice, and "elect[ing] to assume the defense of any such Tax Claims."  (May 25, 2017 S. Smith Letter, ECF No. 1-7, at 1.)

46.     On July 18, 2017, the parties delivered another Joint Release Notice to the Escrow Agent directing the release to NIU of $3,816,390, thereby reducing the disputed reserved escrow funds to $109,941,971.[2]  (July 18, 2017 Joint Release Notice, ECF No. 1-9.)  Again, AT&T delivered this notice based on the information *then* available to it.

**B.     Litigation Regarding the Tax Claims**

47.     While the resolution of the Tax Claims with the Mexican tax authorities has been ongoing, NIU has taken steps in recent months to extract money from the Escrow Account, sell its remaining assets, and dissolve NII.

**1.     NIU's Adversary Action**

48.     NIU petitioned this Court on February 11, 2019 to file an adversary proceeding against AT&T regarding the release of certain of the funds in the Escrow Account, which the Court permitted on March 5, 2019.  (Order Reopening the Bankruptcy Case of NIU Holdings LLC Pursuant to Section 350(b) of the Bankruptcy Code, Rule 5010 of the Federal Rules of Bankruptcy Procedure and Local Rule 5010-1 of the Local Bankruptcy Rules, Case No. 15-

---

[2]     AT&T agreed in good faith that it had not provided written notice for certain claimed amounts and accordingly adjusted its total claim.

10155, ECF No. 15.)  NIU subsequently filed its adversary complaint on March 25, 2019.

(Complaint, ECF No. 1.)

49.     NIU has requested that AT&T permit the release of funds from the Escrow

Account to which it argues it is entitled as a result of the resolution of the 2010 and 2011 audits

notwithstanding the fact that the Complaint acknowledges that there are still years of additional

claims yet to be resolved.  (*See* Complaint ¶¶ 16-17, 54, 63.)

### 2.     NII's Sale of Nextel Brazil

50.     One month after NIU began preparations to file its lawsuit against AT&T, it

became public that NIU was planning on selling its sole remaining asset and ending its corporate

existence.

51.     On March 18, 2019, NII and AI Brazil announced that they planned to sell their

respective interests (70% in the case of NII and 30% in the case of AI Brazil) in Nextel Brazil—

NII's only remaining asset—for $905 million to América Móvil S.A.B de C.V.  As part of the

deal, NII also announced that part of this deal entitled AI Brazil to "the first $10 million and 6%

of additional amounts recovered from" the Escrow Account.  (Ex. 1, March 18, 2019 Press

Release at 2.)

52.     NII also announced its intent to "dissolve and wind up NII after the closing of the

transaction," and its plan to distribute amounts of $1.00 to $1.50 per share to its stockholders.

As of the time of the announcement, NII's Board of Directors had already approved the plan for

liquidation and dissolution.  (*Id.*)

53.     According to a proxy statement filed on May 6, 2019, NII announced a special

meeting for stockholders scheduled for June 27, 2019 for the approval of the dissolution plan.

(Ex. 2, May 6, 2019 Proxy Statement (the "Proxy Statement").)  The Proxy Statement revealed

that NII intended to dissolve pursuant to Delaware General Corporate Law ("DGCL"), electing the "Safe Harbor Procedures" of Sections 280 and 281(a) of the DGCL.  (*Id.* at 67-78.)

54.     NII acknowledged that the proceeds of the sale would be available to satisfy "potential liabilities relating to our indemnification obligations, if any, to . . . New Cingular Wireless (AT&T)."  (*Id*. at 16.)  But the transaction still provided for any remaining Escrow Account funds to be used not for making AT&T whole, but to go in part to AI Brazil.

### 3.     NIU's Upcoming Dissolution

55.     Given NII's public statement that it did not intend to continue its corporate existence, AT&T sent NIU a Tax Claim Notice on May 7, 2019 (the "May 2019 Tax Claim Notice") for additional Tax Claims of $264,242,546 attributable to the 2012 fiscal year (the "Specified 2012 Tax Claim Amount") pursuant to Section 11.5(a) of the Purchase Agreement (Ex. 3, May 2019 Tax Claim Notice), bringing the total amount of open, indemnifiable Tax Claims to $502,922,689.

56.     In the May 2019 Tax Claim Notice, AT&T also requested confirmation that NIU has made adequate provisions to satisfy its obligations to indemnify AT&T under the Purchase Agreement prior to paying out the proceeds of the sale of the Nextel Brazil business to shareholders or other creditors.

57.     In response to the May 2019 Tax Claim Notice regarding the Specified 2012 Tax Claim Amount, NIU has not behaved like an entity that is prepared to indemnify AT&T for the full amount of its claims.

58.     On May 8, 2019, NIU's counsel requested additional information about AT&T's calculation of the Specified 2012 Tax Claim Amount and its relation to previously-asserted claims. (Ex. 4, Correspondence Regarding Tax Claim Notice at 2.)[3]

59.     Then, in a May 9, 2019 letter to AT&T, Shana Smith of NIU stated that the Specified 2012 Tax Claim Amount was "not a meaningful value" and "appears to be the aggregate total of all potential open items subject to audit to which interest and penalties have been added," and that such values "bear no relationship to the actual liability for the tax years and entities which have already been closed." (Ex. 5, May 9, 2019 NIU Letter to AT&T at 1, n.1.). NIU's response did not state that the Specified 2012 Tax Claim Amount in any way inaccurately reflected the maximum tax claim attributable to the 2012 fiscal year.

60.     NIU's May 9 letter also did not meaningfully respond to AT&T's request for confirmation that NIU would be able to meet its indemnification obligations prior to distributing any proceeds of the sale of Nextel Brazil to shareholders or other creditors, aside from referring AT&T to the Proxy Statement. (*Id.* at 1.)

61.     While the Proxy Statement acknowledges AT&T's right to assert indemnification claims, it does not address AT&T's concerns about NII's liquidation and dissolution and the adequate protection of AT&T's interests. NII's plan to direct substantial amounts from the Escrow Fund to AI Brazil—rather than ensuring that such amounts are available to redress AT&T's indemnification claims under the Purchase Agreement—remains problematic.

62.     NIU's refusal to clarify its planned course of actions vis-à-vis its obligations to AT&T have left AT&T with no recourse other than to seek leave of this Court, which has

---

[3]     In response, AT&T's counsel conveyed on May 16, 2019 that, as NIU had assumed the defense of the relevant Tax Claims, it was in possession of all relevant information regarding that calculation. (Ex. 4, Correspondence Regarding Tax Claim Notice at 1.)

exclusive jurisdiction to enforce the Purchase Agreement (Purchase Agreement, ECF 1-2, § 12.3), to enjoin NII from implementing a dissolution plan that fails to reserve, in combination with the funds remaining in the Escrow Account, the full amount of $502,922,689, which reflects AT&T's estimate of the total amount of the Tax Claims or, in the alternative, reserve such amount from any distribution, subject to release only upon further order of this Court.

## V.    CLAIMS FOR RELIEF

### A.    Declaratory Judgment

63.    Defendants-Counterclaimants incorporate by reference the allegations of paragraphs 1-62 inclusive, as though fully set forth herein.

64.    Pursuant to 28 U.S.C. § 2201, made applicable in Bankruptcy Court by Federal Rule of Bankruptcy Procedure 7001, Counterclaimants-Defendants seek a declaratory judgment that:  (i) NIU is obligated to indemnify AT&T for the full amount of the Tax Claims under the Purchase Agreement; and (ii) any dissolution of NII that does not account for full value of these claims is improper.

65.    The Purchase Agreement and the Escrow Agreement are valid and enforceable contracts.  Pursuant to these agreements, the Purchase Agreement requires NIU to indemnify AT&T for the full amount of the Tax Claims.

66.    As explained herein, NII's plan to divert proceeds from the Escrow Account to AI Brazil and dissolve its corporate existence threaten the ability of NIU and NII to perform their obligations under the Purchase Agreement.

67.    AT&T will incur substantial harm as a result of NIU's and NII's actions if funds are released from the Escrow Account, and if NII fails to adequately reserve sufficient funds to indemnify AT&T in its dissolution plan under Delaware law.

### B. Equitable Relief

68.     Defendants-Counterclaimants incorporate by reference the allegations of paragraphs 1-67 inclusive, as though fully set forth herein.

69.     Pursuant to section 105(a) of title 11 of the United States Code, Rule 7001(7) of the Federal Rules of Bankruptcy Procedure, and Rule 65 of the Federal Rules of Civil Procedure made applicable hereto by Bankruptcy Rule 7065, Counterclaimants-Defendants request equitable relief to enjoin NII from dissolving without reserving the full amount of the Tax Claims for AT&T.

70.     As the ability of NIU to meet its indemnification obligations is in doubt, NIU and NII should also be enjoined from distributing any funds to creditors or shareholders, absent an order from this Court permitting it.

71.     AT&T will incur irreparable harm and be left without recourse if NII dissolves and distributes funds to stockholders without reserving sufficient funds to indemnify AT&T for the amount of the Tax Claims.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Defendants-Counterclaimants respectfully request that this Court enter an order and order:

1.      Declaring that:

    a.      NIU is obligated to indemnify AT&T for the full amount of the Tax Claims under the Purchase Agreement; and

    b.      Any dissolution of NII that does not account for the maximum potential amount of the Tax Claims is improper.

2.      Enjoining NII from dissolving without reserving the full amount of the estimate for the total amount of the Tax Claims;

3.       Enjoining NII from releasing funds the Escrow Account absent further order of this Court;

4.       Enjoining NIU and NII from releasing funds from any distribution absent further order of this Court;

5.       Awarding cost, expenses and attorneys' fees to Defendants-Counterclaimants, in an amount to be determined at trial; and

6.       Awarding such further relief as the Court deems just and proper.

Dated:  June 10, 2019
       New York, New York

Respectfully submitted,

*James L. Bromley* /VRH

James L. Bromley
William B. Monahan
Virginia R. Hildreth
David Salter
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Tel:    (212) 558-4000
Fax:    (212) 558-3588
bromleyj@sullcrom.com
monahanw@sullcrom.com
hildrethv@sullcrom.com
salterd@sullcrom.com

*Attorneys for Defendants AT&T Mobility
Holdings B.V., New Cingular Wireless
Services, Inc., Nextel International (Uruguay),
LLC, and Comunicaciones Nextel de México,
S.A. de C.V.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2019, I filed and therefore caused the foregoing
document to be served via the CM/ECF system in the United States Bankruptcy Court for the
Southern District of New York on all parties registered for CM/ECF in the above-captioned
matter.

James L. Bromley