JONES DAY
Jane Rue Wittstein
Thomas E. Lynch
Michael T. Ferruggia
Andrew M. Butler
250 Vesey Street
New York, NY 10281
Tel: (212) 326-3939
Fax: (212) 755-7306

*Attorneys for Reorganized Debtors*
*NIU HOLDINGS LLC AND NII HOLDINGS, INC.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In the matter of: | : | **Chapter 11** |
| NIU Holdings LLC, | : | **Case No. 15-10155 (SCC)** |
| Reorganized Debtor. | : | |
| NIU Holdings LLC, | : | |
| Plaintiff, | : | |
| v. | : | **Adv. Proc. No. 19-01099** |
| AT&T Mobility Holdings, B.V.; New Cingular Wireless Services, Inc.; Nextel International (Uruguay) LLC; and Communicaciones Nextel de México S.A. de C.V., | : | |
| Defendants. | : | |

**ANSWER OF PLAINTIFF-COUNTERCLAIM DEFENDANT NIU HOLDINGS LLC AND THIRD-PARTY DEFENDANT NII HOLDINGS, INC. TO THE CLAIMS ASSERTED BY DEFENDANTS-COUNTERCLAIMANTS-THIRD-PARTY PLAINTIFFS AT&T MOBILITY HOLDINGS B.V., NEW CINGULAR WIRELESS SERVICES, INC., NEXTEL INTERNATIONAL (URUGUAY), LLC, AND COMUNICACIONES NEXTEL DE MÉXICO, S.A. DE C.V.**

Plaintiff-Counterclaim Defendant NIU Holdings LLC ("NIU") and Third-Party Defendant NII Holdings, Inc. ("NII"), by and through their undersigned counsel, respectively submit their answer and affirmative defenses to the counterclaims and third-party claims asserted by

1

Defendants-Counterclaimants-Third-Party Plaintiffs AT&T Mobility Holdings B.V., New Cingular Wireless Services, Inc., Nextel International (Uruguay), LLC, and Comunicaciones Nextel de México, S.A. de C.V in *Defendants' Amended Answer, Affirmative Defenses, and Counterclaims to the Complaint for Declaratory Judgment and Breach of Contract Filed by NIU Holdings LLC* (ECF No. 14) ("Defendants' Counterclaims").[1] In accordance with Federal Rule of Bankruptcy Procedure 7012(b), NIU and NII[2] consent to entry of final orders or judgment by the Bankruptcy Court.

1. Paragraph 1 of Defendants' Counterclaims contains legal conclusions to which no response is required. To the extent a response is required, NIU and NII deny the allegations set forth in Paragraph 1, except they: (i) admit that NIU has certain indemnification obligations under the Purchase Agreement and (ii) admit that NII has certain guarantee obligations under the Purchase Agreement. To the extent Paragraph 2 refers to the Purchase Agreement and the Escrow Agreement, NIU and NII refer to those documents for complete and accurate recitations of their contents.

2. Paragraph 2 of Defendants' Counterclaims contains legal conclusions to which no response is required. To the extent a response is required, NIU and NII deny the allegations set forth in Paragraph 2, except they: (i) admit that NIU has certain indemnification obligations under the Purchase Agreement and (ii) admit that NII has certain guarantee obligations under the Purchase Agreement. To the extent Paragraph 2 refers to the Purchase Agreement and the Approval Order, NIU and NII refer to those documents for complete and accurate recitations of their contents.

---

[1] Capitalized terms not defined herein shall have the same meaning as in the Complaint (ECF No. 1), and if not defined therein, the Counterclaims (ECF No. 14).

[2] Defendants-Counterclaimants-Third-Party Plaintiffs incorrectly denominated NII as a counterclaim defendant instead of a third-party defendant in Defendants' Counterclaims and have not issued a Summons to add NII as a party. While counsel for NII agreed to accept service of the Summons, if and when issued, and NII provides its Answer here to avoid unnecessary delay, NII does not waive the issuance of the Summons and preserves all defenses if service is not timely effectuated.

3. Paragraph 3 of Defendants' Counterclaims contains legal conclusions to which no response is required. To the extent a response is required, NIU and NII deny the allegations set forth in Paragraph 3, except they: (i) admit that they are parties to the Purchase Agreement, through which business operations in Mexico owned by NII or its subsidiaries were sold to Defendant New Cingular; (ii) admit that NIU has indemnification obligations that are set forth in the Purchase Agreement; (iii) admit that NII has guarantee obligations that are set forth in the Purchase Agreement; and (iv) admit that the Purchase Agreement was entered into during and was approved within the bankruptcies of NII and NIU. To the extent Paragraph 3 refers to the Purchase Agreement and the Approval Order, NIU and NII refer to those documents for complete and accurate recitations of their contents.

4. Paragraph 4 of Defendants' Counterclaims contains legal conclusions to which no response is required. To the extent a response is required, NIU and NII deny the allegations set forth in Paragraph 4, except they: (i) admit that NIU has indemnification obligations that are set forth in the Purchase Agreement and (ii) admit that an Escrow Account was established for purposes set forth in the Purchase Agreement and Escrow Agreement. To the extent Paragraph 4 refers to the Purchase Agreement and the Escrow Agreement, NIU and NII refer to those documents for complete and accurate recitations of their contents.

5. Paragraph 5 of Defendants' Counterclaims contains legal conclusions to which no response is required. To the extent a response is required, NIU and NII deny the allegations set forth in Paragraph 5, except they admit that, under certain circumstances, AT&T was required to send a Claim Notice identifying any Claimed Amounts to assert Claims under the Escrow Agreement. To the extent Paragraph 5 refers to the Escrow Agreement, NIU and NII refer to that document for a complete and accurate recitation of its contents.

6. NIU and NII deny knowledge or information sufficient to admit or deny the allegations set forth in Paragraph 6 of Defendants' Counterclaims, except they admit that AT&T delivered a Claim Notice to the Escrow Agent on April 27, 2017 identifying aggregate Claimed Amounts totaling $117,900,000 for Claims set forth in Annex A to the Claim Notice. To the extent Paragraph 6 refers to the Claim Notice, NIU and NII refer to that document for complete and accurate recitations of its contents.

7. NIU and NII deny knowledge or information sufficient to admit or deny the allegations set forth in Paragraph 7 of Defendants' Counterclaims, except they admit that: following communications between AT&T and NIU, (i) AT&T delivered to NIU on April 28, 2017 a document titled "Breakdown of Estimated Taxes and Damages in Dispute under the Audit Proceedings Referenced in Tax Claim Notice Dated April 27, 2017" and (ii) AT&T later revised its aggregate Claimed Amounts from a total of $117,900,000 to a total of $113,800,000 while agreeing to release an additional $4,100,000 to NIU from the Escrow Account. To the extent Paragraph 7 refers to documents, NIU and NII refer to those documents for complete and accurate recitations of their contents.

8. NIU and NII deny the allegations set forth in Paragraph 8 of Defendants' Counterclaims, except they: (i) admit that Claimed Amounts that NIU disputed included a Claimed Amount regarding a 2012 tax proceeding; (ii) admit that NIU's assertion of disputes regarding Claimed Amounts created Disputed Claim Amounts, including a Disputed Claim Amount regarding a 2012 tax proceeding; and (iii) admit that the parties agreed to a joint release of $3,816,390 from the Escrow Account in a notice dated July 18, 2017. To the extent Paragraph 8 refers to documents, NIU and NII refer to those documents for complete and accurate recitations of their contents.

9. NIU and NII deny the allegations set forth in Paragraph 9 of Defendants' Counterclaims, except they admit that the parties agreed to a joint release of $3,994,720.20 from the Escrow Account in a notice dated July 9, 2018. To the extent Paragraph 9 refers to documents, NIU and NII refer to those documents for complete and accurate recitations of their contents.

10. NIU and NII deny knowledge or information sufficient to admit or deny the allegations set forth in Paragraph 10 of Defendants' Counterclaims regarding alleged "estimated penalties." NIU and NII deny the allegations set forth in Paragraph 10 of Defendants' Counterclaims, except they admit that: (i) all proceedings related to the Mexican tax authorities' audits of Defendant Comunicaciones Nextel de Mexico S.A. de C.V. for the fiscal years 2010 and 2011 have been resolved; (ii) tax audits of Defendant Comunicaciones Nextel de Mexico S.A. de C.V. for the fiscal years 2010 and 2011 were resolved for less than the estimates AT&T had identified as its Claimed Amounts for those matters.

11. Paragraph 11 of Defendants' Counterclaims contains legal conclusions to which no response is required. To the extent a response is required, NIU and NII deny the allegations set forth in Paragraph 11 of Defendants' Counterclaims, except they admit that (i) AT&T sent to NIU on May 7, 2019 a notice that AT&T claimed related to certain 2012 taxes and (ii) NIU has undertaken the defense of certain Tax Claims in accordance with the applicable provisions of the Purchase Agreement. To the extent Paragraph 11 refers to documents, NIU and NII refer to those documents for complete and accurate recitations of their contents.

12. Paragraph 12 of Defendants' Counterclaims contains legal conclusions to which no response is required. To the extent a response is required, NIU and NII deny the allegations set forth in Paragraph 12 of Defendants' Counterclaims, except they admit that NIU is pursuing the release of $68,325,952 from the Escrow Account. To the extent Paragraph 12 refers to NIU's Complaint, NIU and NII refer to that document for a complete and accurate recitation of its contents.

13. NIU and NII deny the allegations set forth in Paragraph 13 of Defendants' Counterclaims, except they deny knowledge or information sufficient to admit or deny the allegations in Paragraph 13 of Defendants' Counterclaims to the extent they purport to identify AT&T's or the other Defendants' concerns. To the extent Paragraph 13 refers to documents, NIU and NII refer to those documents for complete and accurate recitations of their contents.

14. Paragraph 14 of Defendants' Counterclaims contains legal conclusions to which no response is required. To the extent a response is required, NIU and NII deny the allegations set forth in Paragraph 14, except they admit that that Paragraph 14 purports to describe the order and judgment being sought by Defendants in their Counterclaims.

15. Paragraph 15 of Defendants' Counterclaims contains legal conclusions to which no response is required. To the extent a response is required, NIU and NII deny the allegations set forth in Paragraph 15, except they admit that the Court has jurisdiction to consider this matter.

16. Paragraph 16 of Defendants' Counterclaims contains legal conclusions to which no response is required. To the extent a response is required, NIU and NII admit that venue is proper before this Court.

17. NIU and NII deny knowledge or information sufficient to admit or deny the allegations in Paragraph 17 of Defendants' Counterclaims.

18. NIU and NII deny knowledge or information sufficient to admit or deny the allegations in Paragraph 18 of Defendants' Counterclaims.

19. NIU and NII deny knowledge or information sufficient to admit or deny the allegations in Paragraph 19 of Defendants' Counterclaims.

20. NIU and NII deny knowledge or information sufficient to admit or deny the allegations in Paragraph 20 of Defendants' Counterclaims.

21. NIU and NII admit the allegations in Paragraph 21 of Defendants' Counterclaims.

22. NIU and NII admit the allegations in Paragraph 22 of Defendants' Counterclaims.

23. NIU and NII deny the allegations in Paragraph 23 of Defendants' Counterclaims, except NIU and NII admit that (i) NII and several of its affiliates filed for bankruptcy under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101, et seq., in proceedings jointly administered by this Court under Case No. 14-12611; and (ii) NII filed for bankruptcy on September 15, 2014.

24. NIU and NII admit the allegations in Paragraph 24 of Defendants' Counterclaims and, to the extent Paragraph 24 refers to the Purchase Agreement and court orders related to the Purchase Agreement, NIU and NII refer to those documents for complete and accurate recitations of their contents.

25. Paragraph 25 of Defendants' Counterclaims contains legal conclusions to which no response is required. To the extent a response is required, NIU and NII deny the allegations set forth in Paragraph 25, except they: (i) admit that the ultimate value of tax liabilities, if any, potentially owed by Defendant Com Nextel to Mexican tax authorities was unknown at the time the sale transaction evidenced by the Purchase Agreement was concluded; (ii) admit that the Purchase Agreement contains provisions pursuant to which NIU agreed to provide indemnification for certain tax liabilities, if any, as and when due under the Purchase Agreement; (iii) admit that the Purchase Agreement contains provisions pursuant to which NII agreed to provide a guarantee for

certain NIU indemnification obligations, if any, as and when due under the Purchase Agreement; and (iv) admit that the parties' agreement provided for the establishment of an Escrow Account with segregated funds that would be administered and disbursed in accordance with the relevant provisions of the Escrow Agreement. To the extent Paragraph 25 refers to the Purchase Agreement and the Escrow Agreement, NIU and NII refer to those documents for complete and accurate recitations of their contents.

26. Paragraph 26 of Defendants' Counterclaims contains legal conclusions to which no response is required. To the extent a response is required, NIU and NII deny the allegations set forth in Paragraph 26, except they: (i) admit that NIU sold its interests in Com Nextel in accordance with the terms of the Purchase Agreement for a final purchase price of $1.875 billion minus certain adjustments; (ii) admit that the Purchase Agreement was executed as of January 26, 2015; and (iii) admit that the transaction evidenced by the Purchase Agreement closed on April 30, 2015. To the extent Paragraph 26 refers to the Purchase Agreement, NIU and NII refer to that document for a complete and accurate recitation of its contents.

27. NIU and NII deny the allegations set forth in Paragraph 27 of Defendants' Counterclaims, except they admit that the value of tax liabilities, if any, potentially to be owed by Defendant Com Nextel to Mexican tax authorities was unknown at the time the sale transaction evidenced by the Purchase Agreement was concluded.

28. NIU and NII deny the allegations set forth in Paragraph 28 of Defendants' Counterclaims, except they: (i) admit that the Purchase Agreement contains provisions pursuant to which NIU agreed to provide indemnification for certain tax liabilities, if any, as and when due under the Purchase Agreement; and (ii) admit that the parties' agreement provided for the establishment of an Escrow Account with segregated funds that would be administered and disbursed in accordance with the relevant provisions of the Escrow Agreement. To the extent Paragraph 28 refers to the Purchase Agreement or the Escrow Agreement, NIU and NII refer to those documents for complete and accurate recitations of their contents.

29. NIU and NII deny the allegations set forth in Paragraph 29 of Defendants' Counterclaims, except they admit that the parties to the Purchase Agreement agreed that, upon closing of the Purchase Agreement, $187.5 million would be deposited into an Escrow Account that would be

available, among other purposes, to satisfy certain claims arising after closing of the Purchase Agreement and that would be administered and disbursed in accordance with the relevant provisions of the Escrow Agreement. To the extent Paragraph 29 refers to the Purchase Agreement or the Escrow Agreement, NIU and NII refer to those documents for complete and accurate recitations of their contents.

30. NIU and NII deny the allegations set forth in Paragraph 30, except they admit that Paragraph 30 contains incomplete quotations of text from the Approval Order and/or Purchase Agreement. To the extent Paragraph 31 refers to the Approval Order and Purchase Agreement, NIU and NII refer to those documents for complete and accurate recitations of their contents.

31. Paragraph 31 of Defendants' Counterclaims contains legal conclusions to which no response is required. To the extent a response is required, NIU and NII deny the allegations set forth in Paragraph 31, except they: (i) admit that NIU has certain indemnification obligations for "Taxes and Damages," if any, as and when due under the Purchase Agreement; and (ii) admit that Paragraph 31 contains incomplete quotations of text from the tax indemnification provisions of the Purchase Agreement. To the extent Paragraph 31 refers to the Purchase Agreement, NIU and NII refer to that document for a complete and accurate recitation of its contents.

32. NIU and NII deny the allegations set forth in Paragraph 32, except they: (i) admit that NIU, New Cingular, and Citibank N.A. executed the Escrow Agreement, dated January 26, 2015, in conjunction with the Purchase Agreement; (ii) admit that the Escrow Account established by the Escrow Agreement could be used, in certain circumstances and in accordance with the terms of that agreement, to support NIU's indemnification obligations under the Purchase Agreement; and (iii) admit that Citibank was appointed as the Escrow Agent with responsibility for administering the Escrow Account in accordance with the terms of the Escrow Agreement. To the extent Paragraph 32 refers to the Purchase Agreement or the Escrow Agreement, NIU and NII refer to those documents for complete and accurate recitations of their contents.

33. Paragraph 33 of Defendants' Counterclaims contains legal conclusions to which no response is required. To the extent a response is required, NIU and NII deny the allegations set forth in Paragraph 33, except they: (i) admit that the Escrow Agreement sets forth the requirements for any distribution of funds from the Escrow Account and (ii) admit that Paragraph 33 contains incomplete

quotations of text from the provisions of the Escrow Agreement relating to the distribution of funds from the Escrow Account in accordance with a Joint Release Notice. To the extent Paragraph 33 refers to the Escrow Agreement, NIU and NII refer to that document for a complete and accurate recitation of its contents.

34. Paragraph 34 of Defendants' Counterclaims contains legal conclusions to which no response is required. To the extent a response is required, NIU and NII deny the allegations set forth in Paragraph 34, except they: (i) admit that Section 3(e)(i)(2) of the Escrow Agreement sets forth the procedure to be followed in certain circumstances, including where AT&T or its affiliate sought to assert a Claim against the Escrow Fund pursuant to Article 9 or Article 11 of the Purchase Agreement; (ii) admit that, in certain circumstances where it sought to assert a Claim against the Escrow Fund, AT&T was required "to deliver a written notice to the Escrow Agent describing such Claim in reasonable detail and stating a reasonable estimate of the amount of the Escrow Fund to be reserved with respect to such Claim prepared in good faith based on information then available . . . ," (iii) admit that Paragraph 34 contains an incomplete quotation from Section 3(e)(i)(2) of the Escrow Agreement. To the extent Paragraph 34 refers to the Purchase Agreement or Escrow Agreement, NIU and NII refer to those documents for complete and accurate recitations of their contents.

35. Paragraph 35 of Defendants' Counterclaims contains legal conclusions to which no response is required. To the extent a response is required, NIU and NII deny the allegations set forth in Paragraph 35, except they: (i) admit that, in circumstances where NIU (as Seller) does not submit to the Escrow Agent an Objection Notice within thirty days of receiving a Claim Notice, Section 3(e)(i)(3) of the Escrow Agreement provides that the Escrow Agent shall release to Purchaser amounts consistent with the calculations set forth in Section 3(e)(i)(3); and (ii) admit that Paragraph 35 contains an incomplete quotation from Section 3(e)(i)(3) of the Escrow Agreement. To the extent Paragraph 35 refers to the Purchase Agreement or Escrow Agreement, NIU and NII refer to those documents for complete and accurate recitations of their contents.

36. Paragraph 36 of Defendants' Counterclaims contains legal conclusions to which no response is required. To the extent a response is required, NIU and NII deny the allegations set forth in Paragraph 36, except they: (i) admit that, in circumstances in which NIU (as Seller) delivers a sufficient Objection Notice to the Escrow Agent within thirty days of receiving a Claim Notice,

Section 3(e)(ii) of the Escrow Agreement sets forth the extent to which the Escrow Agent shall release to Purchaser amounts consistent with the calculations set forth in that section; (ii) admit that, to the extent the Escrow Agent holds disputed amounts in the Escrow Account pursuant to Section 3(e)(ii) of the Escrow Agreement following receipt of a Claim Notice and an Objection Notice, the Escrow Agent will continue to hold those funds until it receives either (1) a Joint Release Notice executed and delivered by the parties or (2) written notice delivered by Purchaser or Seller with either a legally binding agreement entered into by the parties or a final judgment by a court or arbitral tribunal with respect to the disputed amount. To the extent Paragraph 36 refers to the Purchase Agreement or Escrow Agreement, NIU and NII refer to those documents for complete and accurate recitations of their contents.

37. Paragraph 37 of Defendants' Counterclaims contains legal conclusions to which no response is required. To the extent a response is required, NIU and NII deny the allegations set forth in Paragraph 37, except they: (i) admit that the "Final Release Date" to which the Escrow Agreement refers in Section 3(e)(iii)(1) was April 30, 2017; and (ii) Section 3(e)(iii)(1) of the Escrow Agreement required the parties to execute and deliver to the Escrow Agent a Joint Release Notice instructing it to release to NIU funds in the Escrow Account that exceeded the sum of (A) the aggregate Claimed Amount in respect of all pending Disputed Claim Amounts and (B) the aggregate Claimed Amount for which the Objection Period had not yet expired, in each case pursuant to Claim Notices received by the Escrow Agent prior to the Final Release Date. To the extent Paragraph 37 refers to the Purchase Agreement or Escrow Agreement, NIU and NII refer to those documents for complete and accurate recitations of their contents.

38. NIU and NII deny knowledge or information sufficient to admit or deny the allegations in Paragraph 38 of Defendants' Counterclaims, except they admit that: (i) written notices issued by Mexican tax authorities identify fiscal years and taxes that are subject to review for tax entities subject to such reviews; (ii) tax audits, examinations, and related proceedings in Mexico can take years to resolve and can include litigation; and (iii) Mexican tax authorities may examine and challenge different aspects of a tax entity's obligations regarding the taxes and period subject to review. To the extent Paragraph 38 refers to documents, NIU and NII refer to those documents for complete and accurate recitations of their contents.

39. NIU and NII deny the allegations in Paragraph 39 of Defendants' Counterclaims, except: (i) they deny knowledge or information sufficient to admit or deny the allegations in Paragraph 39 relating to any specific proceedings to which Defendants intend to refer and (ii) they admit that: (1) as of April 27, 2017, Com Nextel and its affiliated entities faced the possibility of future tax liabilities to Mexican tax authorities; (2) as of April 27, 2017, Com Nextel and its affiliated entities had received certain written notices from Mexican tax authorities of matters that were identified as being subject to audit, examination, or related proceedings, and those matters included income taxes, excise taxes, and value added taxes for certain entities, certain taxes, and certain fiscal years between 2010 and 2014. To the extent Paragraph 39 refers to documents, NIU and NII refer to those documents for complete and accurate recitations of their contents.

40. NIU and NII deny the allegations in Paragraph 40 of Defendants' Counterclaims, except (A) they deny knowledge or information sufficient to admit or deny the allegations in Paragraph 40 to the extent Defendants intend to refer to specific notices or proceedings, and (B) they admit that: (i) the Claim Notice AT&T delivered on April 27, 2017 under the Escrow Agreement was timely delivered; (ii) as of April 27, 2017, proceedings related to matters AT&T identified in its April 27, 2017 Claim Notice were at various procedural stages; (iii) as of April 27, 2017, Mexican tax authorities had not determined the final tax liabilities for the matters AT&T identified in its April 27, 2017 Claim Notice; (iv) after April 27, 2017, Mexican tax authorities provided written notice regarding certain matters for which it had not provided written notice before April 27, 2017; and (v) AT&T sent to NIU on May 7, 2019 a document that AT&T purported was notice related to certain 2012 taxes. To the extent Paragraph 40 refers to documents, NIU and NII refer to those documents for complete and accurate recitations of their contents.

41. Paragraph 41 of Defendants' Counterclaims contains legal conclusions to which no response is required. To the extent a response is required, NIU and NII deny the allegations in Paragraph 41 of Defendants' Counterclaims, except (A) they deny knowledge or information sufficient to admit or deny the allegations regarding AT&T's good faith, and (B) they admit that: (i) AT&T's April 27, 2017 Claim Notice purported to satisfy its obligations under Section 3(e)(i)(2) of the Escrow Agreement and (ii) Paragraph 41 contains incomplete quotations from AT&T's April 27, 2017 Claim Notice. To the extent Paragraph 41 refers to the Escrow Agreement, to the Purchase Agreement, and to AT&T's April 27, 2017 Claim Notice, NIU and NII refer to those documents for complete and accurate recitations of their contents.

42. NIU and NII deny the allegations in Paragraph 42 of Defendants' Counterclaims, except NIU and NII deny knowledge or information sufficient to admit or deny the allegations in Paragraph 42 regarding AT&T's knowledge, and NIU and NII admit that the parties delivered to the Escrow Agent on May 4, 2017 a Joint Release Notice directing that the Escrow Agent release to NIU $45,562,279.58, which was the balance remaining in the Escrow Account less certain aggregate Claimed Amounts to which the parties referred in the Joint Release Notice. To the extent Paragraph 42 refers to the Escrow Agreement and to the parties' May 4, 2017 Joint Release Notice, NIU and NII refer to those documents for complete and accurate recitations of their contents.

43. NIU and NII deny the allegations in Paragraph 43 of Defendants' Counterclaims, except (A) they deny knowledge or information sufficient to admit or deny the allegations in Paragraph 42 regarding AT&T's knowledge, and (B) they admit that the parties delivered to the Escrow Agent on May 18, 2017 a Joint Release Notice directing the Escrow Agent to release $4,100,000 to NIU from the Escrow Account, reducing the amount held in the Escrow Account from $117,900,000 to $113,800,000. To the extent Paragraph 43 refers to the Escrow Agreement and to the parties' May 18, 2017 Joint Release Notice, NIU and NII refer to those documents for complete and accurate recitations of their contents.

44. NIU and NII admit the allegations in Paragraph 44 of Defendants' Counterclaims, and to the extent Paragraph 44 refers to NIU's May 25, 2017 Objection Notice, NIU and NII refer to that document for a complete and accurate recitation of its contents.

45. NIU and NII deny the allegations in Paragraph 45 of Defendants' Counterclaims, except NIU and NII admit that: (i) on May 25, 2017, NIU delivered a letter to AT&T disputing that AT&T or its affiliates, as of that date, were entitled to indemnity for any of the Tax Claims set forth in AT&T's April 27, 2017 Claim Notice and affirming that NIU was electing to assume the defense of any such Tax Claims and (ii) Paragraph 45 contains incomplete quotations from NIU's May 25, 2017 letter to AT&T. To the extent Paragraph 45 refers to NIU's May 25, 2017 letter, NIU and NII refer to that document for a complete and accurate recitation of its contents.

46. NIU and NII deny the allegations in Paragraph 46 of Defendants' Counterclaims, except (A) they deny knowledge or information sufficient to admit or deny the allegations in Paragraph 46 regarding AT&T's knowledge and good faith, and (B) they admit (i) that the parties delivered to

the Escrow Agent on July 18, 2017 a Joint Release Notice directing that the Escrow Agent release to NIU $3,816,390.00, by which amount the aggregate Claimed Amounts set forth in the April 27, 2017 Claim Notice that were previously reduced by the parties' May 18, 2017 Joint Release Notice would be further reduced and (ii) that the July 18, 2017 joint release of $3,816,390 from the Escrow Account reduced the aggregate amount of the Disputed Claims Amounts to $109,941,971. To the extent Paragraph 46 refers to the Escrow Agreement, to the parties' July 18, 2017 Joint Release Notice or their May 18, 2017 Joint Release Notice, NIU and NII refer to those documents for complete and accurate recitations of their contents.

47. NIU and NII deny the allegations in Paragraph 47 of Defendants' Counterclaims, except they admit that: (i) discussions regarding potential resolution of certain Tax Claims has been and is ongoing among AT&T and its affiliates, NII and its affiliates, and Mexican tax authorities; (ii) NIU has taken steps in recent months to enforce its rights under the Escrow Agreement by demanding performance by AT&T, including demands relating to NIU's rights to funds in the Escrow Account; (iii) NII has taken steps in recent months to sell NII's business operations in Brazil, NII's sole remaining operating asset; and (iv) the NII Board of Directors approved and submitted to stockholders for approval a plan to dissolve and wind up NII after the closing of the transaction through which NII will sell its remaining operating asset.

48. NIU and NII admit the allegations in Paragraph 48 of Defendants' Counterclaims. To the extent Paragraph 48 refers to the *Motion of NIU Holdings LLC To Reopen Its Bankruptcy Case Pursuant To Section 350(b) of The Bankruptcy Code, Rule 5010 of The Federal Rules of Bankruptcy Procedure and Local Rule 5010-1 of The Local Bankruptcy Rules* (*In re NIU Holdings LLC*, Case No. 15-10155, Dkt. No. 11); the *Order Granting Motion to Reopen Chapter 11 Case* (*id.* Dkt. No. 15); and NIU's Complaint (ECF No. 1), NIU and NII refer to those documents for complete and accurate recitations of their contents.

49. NIU and NII deny the allegations in Paragraph 49 of Defendants' Counterclaims, except NIU and NII admit that: (i) NIU has demanded that AT&T perform its obligations by releasing funds from the Escrow Account to which NIU is entitled as a consequence of the 2010 and 2011 Mexican tax audits of Defendant Com Nextel being concluded and (ii) certain tax audits relating to years other than 2010 and 2011 and entities other than Defendant Com Nextel have not yet been resolved

with Mexican tax authorities. To the extent Paragraph 49 refers to NIU's Complaint, NIU and NII refer to that document for a complete and accurate recitation of its contents.

50. NIU and NII deny the allegations in Paragraph 50 of Defendants' Counterclaims, except NIU and NII admit: (i) that NII announced on March 18, 2019 that (a) NII had entered into an agreement to sell NII's operating businesses in Brazil, NII's sole remaining operating asset and (b) NII's Board of Directors had approved and intended to submit to stockholders for approval a plan to dissolve and wind up NII and its subsidiaries after the closing of the Brazil sale; and (ii) that NII's March 18, 2019 announcement occurred approximately one month after NIU filed for leave to reopen its bankruptcy case on February 11, 2019 in order to commence this adversary proceeding.

51. NIU and NII deny the allegations in Paragraph 51 of Defendants' Counterclaims, except NIU and NII admit: (i) that NII announced on March 18, 2019 that it and AI Brazil B.V. had entered into an agreement to sell all of their respective interests in the Nextel Brazil businesses (approximately 70% in the case of NII and approximately 30% in the case of AI Brazil) to América Móvil S.A.B. de C.V.; (ii) that the agreed aggregate purchase price for which América Móvil S.A.B. de C.V. will acquire the Nextel Brazil businesses is $905 million less net debt and subject to certain adjustments at closing; and (iii) that, in connection with the sale of Nextel Brazil businesses, NII and AI Brazil agreed that if the transaction is consummated, AI Brazil will be entitled to the first $10 million and 6% of additional amounts recovered from the Nextel Mexico escrow, if and when released, as a resolution to an outstanding disagreement regarding the characterization of required contributions to Nextel Brazil businesses from future proceeds released from the Nextel Mexico escrow account. To the extent Paragraph 51 refers to NII's March 18, 2019 press release, NIU and NII refer to that document for a complete and accurate recitation of its contents.

52. NIU and NII deny the allegations in Paragraph 52 of Defendants' Counterclaims, except NIU and NII admit: (i) that NII announced on March 18, 2019 that its Board of Directors has approved and would submit to stockholders for approval a plan to dissolve and wind up NII after the closing of the transaction through which it would sell its interests in Nextel Brazil businesses; (ii) that NII has indicated that $1.00 to $1.50 is a preliminary estimate of the amounts that may initially be available for distribution to NII stockholders relating to the transaction as part of NII's dissolution and wind up process; and (iii) as of the time of the March 18, 2019 announcement, NII's Board of

Directors had approved the plan to dissolve and wind up NII. To the extent Paragraph 52 refers to NII's March 18, 2019 press release, NIU and NII refer to that document for a complete and accurate recitation of its contents.

53. NIU and NII deny the allegations in Paragraph 53 of Defendants' Counterclaims, except NIU and NII admit that NII's Proxy Statement, filed on May 6, 2019 to be mailed to stockholders on or about May 24, 2019 Pursuant to Section 14(a) of the Securities Exchange Act of 1934, included: (i) an announcement of a special meeting for stockholders scheduled to be held on June 27, 2019 for the approval of, among other things, a Plan of Dissolution as set forth in the Proxy Statement; (ii) statements regarding the provisions in the proposed Plan of Dissolution and NII's intention to proceed in accordance with the Delaware General Corporate Law, including the Safe Harbor Procedures in Section 280 and 281(a) of that law, all conditioned on the completion of the Brazil transaction and subject to final decisions of NII's Board of Directors, all as fully set forth in the Proxy Statement. To the extent Paragraph 53 refers to NII's Proxy Statement and its Plan of Dissolution, NIU and NII refer to those documents for complete and accurate recitations of their contents.

54. NIU and NII deny the allegations in Paragraph 54 of Defendants' Counterclaims, except NIU and NII admit that NII acknowledged in its Proxy Statement, filed on May 6, 2019, that the indemnification obligations, if any, to Defendants New Cingular and AT&T were among the potential liabilities which could impact the amount of proceeds available in any dissolution. To the extent Paragraph 54 refers to NII's Proxy Statement and its Plan of Dissolution, NIU and NII refer to those documents for complete and accurate recitations of their contents.

55. NIU and NII deny the allegations in Paragraph 55 of Defendants' Counterclaims, except NIU and NII deny knowledge or information sufficient to admit or deny the allegations regarding the motivation for AT&T's conduct, and NIU and NII admit that AT&T sent to NIU on May 7, 2019 a letter regarding a "Tax Claim Notice" in which AT&T purported to provide an estimate of potentially indemnifiable Taxes and Damages, which NII and NIU disputed in its May 9 letter. To the extent Paragraph 55 refers to AT&T's May 7, 2019 letter to NIU, NIU and NII refer to that document for a complete and accurate recitation of its contents.

56. NIU and NII deny the allegations in Paragraph 56 of Defendants' Counterclaims, except NIU and NII admit that AT&T's May 7, 2019 letter to NIU purported to request confirmation, among other things, that NIU will "make adequate provisions to satisfy its obligations to pay such amounts to Purchaser as and when due under the Purchase Agreement prior to paying out the proceeds of the sale of the Nextel Brazil businesses to shareholders (or other creditors) . . . ." To the extent Paragraph 56 refers to AT&T's May 7, 2019 letter to NIU, NIU and NII refer to that document for a complete and accurate recitation of its contents.

57. NIU and NII deny the allegations in Paragraph 57 of Defendants' Counterclaims.

58. NIU and NII deny the allegations in Paragraph 58 of Defendants' Counterclaims, except NIU and NII admit (i) that NIU's counsel requested on May 8, 2019 additional information about AT&T's calculation of the purported Tax Claim set forth in AT&T's May 7, 2019 letter to NIU and its relation to previously asserted claims and (ii) AT&T's counsel responded to NIU's request on May 16, 2019 and stated that NIU had assumed defense of the relevant Tax Claims and was in possession of all relevant information regarding the calculation. To the extent Paragraph 58 refers to NIU's May 8, 2019 request and AT&T's May 16, 2019 response, NIU and NII refer to those communications for complete and accurate recitations of their contents.

59. NIU and NII deny the allegations in Paragraph 59 of Defendants' Counterclaims, except NIU and NII admit that Shana Smith, as a representative of NIU, sent to AT&T a letter on May 9, 2019 that stated, in part, that the "Specified 2012 Tax Claim Amount" identified in AT&T's May 7, 2019 letter was "not a meaningful value," "appears to be the aggregate total of all potential open items subject to audit to which interest and penalties have been added," and that those "'under audit' values bear no relationship to the actual liability for the tax years and entities which have already been closed." To the extent Paragraph 59 refers to NIU's May 9, 2019 letter to AT&T, NIU and NII refer to that document for a complete and accurate recitation of its contents.

60. NIU and NII deny the allegations in Paragraph 60 of Defendants' Counterclaims, except NIU and NII admit that NIU's May 9, 2019 letter responded to AT&T's request for confirmation regarding NIU's plans for addressing any valid indemnifiable Tax claims in connection with the proposed dissolution contemplated after the proposed sale of the Nextel Brazil businesses by referring AT&T to the definitive proxy statement filed by NII with the Securities and Exchange

16

Commission on May 6, 2019. To the extent Paragraph 60 refers to NIU's May 9, 2019 letter to AT&T and NII's Proxy Statement, NIU and NII refer to those documents for complete and accurate recitations of their contents.

61. NIU and NII deny the allegations in Paragraph 61 of Defendants' Counterclaims, except NIU and NII admit that the definitive proxy statement filed by NII with the Securities and Exchange Commission on May 6, 2019 acknowledges AT&T's right to assert indemnification claims. To the extent Paragraph 61 refers to NII's Proxy Statement, NIU and NII refer to that document for a complete and accurate recitation of its contents.

62. Paragraph 62 of Defendants' Counterclaims contains legal conclusions to which no response is required. To the extent a response is required, NIU and NII deny the allegations set forth in Paragraph 62.

63. NIU and NII incorporate by reference, as if fully set forth herein, their responses to paragraphs 1 through 62 of Defendants' Counterclaims.

64. Paragraph 64 of Defendants' Counterclaims contains legal conclusions to which no response is required. To the extent a response is required, NIU and NII deny the allegations set forth in Paragraph 64, except NIU and NII admit that Paragraph 64 identifies relief that Counterclaimants-Defendants purport to seek in this action.

65. Paragraph 65 of Defendants' Counterclaims contains legal conclusions to which no response is required. To the extent a response is required, NIU and NII deny the allegations set forth in Paragraph 65, except they: (i) admit that the Purchase Agreement and the Escrow Agreement are valid and enforceable contracts and (ii) admit that NIU has certain indemnification obligations under the Purchase Agreement. To the extent Paragraph 65 refers to the Purchase Agreement and the Escrow Agreement, NIU and NII refer to those documents for complete and accurate recitations of their contents.

66. NIU and NII deny the allegations set forth in Paragraph 66 of Defendants' Counterclaims. To the extent Paragraph 66 refers to the Purchase Agreement and the Escrow Agreement, NIU and NII refer to those documents for complete and accurate recitations of their contents.

67. NIU and NII deny the allegations set forth in Paragraph 67 of Defendants' Counterclaims. To the extent Paragraph 67 refers to the Purchase Agreement and the Escrow Agreement, NIU and NII refer to those documents for complete and accurate recitations of their contents.

68. NIU and NII incorporate by reference, as if fully set forth herein, their responses to paragraphs 1 through 67 of Defendants' Counterclaims.

69. Paragraph 69 of Defendants' Counterclaims contains legal conclusions to which no response is required. To the extent a response is required, NIU and NII deny the allegations set forth in Paragraph 69, except NIU and NII admit that Paragraph 69 identifies relief that Counterclaimants-Defendants purport to request in this action.

70. Paragraph 70 of Defendants' Counterclaims contains legal conclusions to which no response is required. To the extent a response is required, NIU and NII deny the allegations set forth in Paragraph 70.

71. Paragraph 71 of Defendants' Counterclaims contains legal conclusions to which no response is required. To the extent a response is required, NIU and NII deny the allegations set forth in Paragraph 71.

72. The Prayer for Relief that is part of Defendants-Counterclaimants' Counterclaims contains legal conclusions to which no response is required. To the extent a response is required, NIU and NII deny that Defendants-Counterclaimants are entitled to any of the relief set forth in the Prayer for Relief, and they respectfully request that the Court deny Defendants-Counterclaimants' Prayer for Relief.

73. To the extent that any allegation in Defendants-Counterclaimants' Counterclaims is neither admitted nor denied in the preceding paragraphs, it is hereby denied.

74. Without undertaking any burden of proof not otherwise assigned to it by law, NIU and NII assert the following defenses with respect to the Counterclaims that Defendants-Counterclaimants purport to assert.

75. <u>First Affirmative Defense</u>: Defendants-Counterclaimants' Counterclaims fail to state a claim upon which relief can be granted.

76. <u>Second Affirmative Defense</u>: Defendants-Counterclaimants are not entitled to relief because their claims are inconsistent with the terms of the parties' written agreements.

77. <u>Third Affirmative Defense</u>: Defendants-Counterclaimants' Counterclaims are barred in whole or in part by equity.

78. <u>Fourth Affirmative Defense</u>: Defendants-Counterclaimants' Counterclaims are not ripe.

79. <u>Fifth Affirmative Defense</u>: Defendants-Counterclaimants' Counterclaims are barred in whole or in part for lack of standing since Defendants-Counterclaimants can point to no injury in fact.

80. <u>Sixth Affirmative Defense</u> Defendants-Counterclaims' claims against NII are barred for insufficient process.

81. <u>Seventh Affirmative Defense</u>: Defendants-Counterclaims' claims against NII are barred for insufficient service of process.

82. <u>Eighth Affirmative Defense</u> NIU and NII expressly reserve all other applicable legal and equitable defenses.

83. NIU and NII expressly reserve the right to amend this answer to Defendants-Counterclaimants' Counterclaims to assert any other defense that facts later developed may disclose.

Dated: July 1, 2019
      New York, New York

Respectfully submitted,

/s/ Thomas E. Lynch
Jane Rue Wittstein
Thomas E. Lynch
Michael T. Ferruggia
Andrew M. Butler
JONES DAY
250 Vesey St.
New York, NY 10281-1047
Tel:   (212) 326-3939
Fax:   (212) 755-7306
Email: jruewittstein@jonesday.com
        telynch@jonesday.com
        mferruggia@jonesday.com
        abutler@jonesday.com

*Attorneys for Reorganized Debtors*
*NIU HOLDINGS LLC AND NII HOLDINGS, INC.*